JULIUS WITTENBERG v. L. K. ONSGARD.

December 15, 1899.

Nos. 11,725—(30).

**Expert—Cross-Examination.**

A medical expert, having in his evidence in chief diagnosed the injury to the plaintiff as a dislocation of the cervical vertebræ, complicated with a fracture, and having then testified, without qualification or limitation, that the accepted treatment of a dislocation of cervical vertebræ, as laid down by the medical authorities, was a reduction of the dislocation, was

asked on cross-examination whether a certain work (admitted by him to be a standard authority) did not lay it down that, where the dislocation was complicated with a fracture, no physician would be justified in attempting to reduce the dislocation. *Held*; that this was proper cross-examination, and that it was error to exclude the question.

## Hypothetical Question.

All hypothetical questions put to an expert witness must be based upon facts admitted or established, or which, if controverted, might be legitimately found by the jury from the evidence. They should also embody all the facts relating to the subject upon which the opinion of the witness is asked. A certain hypothetical question *held* to have been improperly allowed, because not including all the facts bearing upon the subject upon which the opinion of the witness was asked, and also because it was based in part upon a fact not admitted or established, and which there was no evidence tending to prove.

## Waiver of Jury Trial.

The court may disregard a waiver of a jury trial by the parties, and require the issues to be submitted to a jury. The matter is addressed to his sound discretion. The waiver of a jury in this case construed as applying only to the term of court at which it was made.

## Application to Photograph Plaintiff.

*Held*, also, that an application of the defendant to the court to require the plaintiff to submit his neck to be photographed by the use of the Roentgen or X-rays, in order to ascertain the nature of his injuries, was properly refused, because the application was not seasonably made, and also because it did not sufficiently appear that the person by whom it was proposed that the photograph was to be taken had the requisite skill and experience to properly apply the rays.

## Roentgen Rays.

Whether science is yet sufficiently advanced to justify the courts in taking judicial notice, as an established fact, that exposure to X-rays is not injurious to the subject, quære.

Action in the district court for Houston county to recover $10,-000 damages for alleged malpractice as a physician. The case was tried before Whytock, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500; and from an order denying a motion for a new trial, Kingsley, J., defendant appealed. Reversed.

*Duxbury & Duxbury,* for appellant.

The stipulation waiving trial by jury and the order thereon had the force of a contract, and could be set aside only for the same reasons that would avoid a contract. 1 Thompson, Tr. § 361; Bingham v. Board of Supervisors of Winona Co., 6 Minn. 82 (136), 8 Minn. 390 (441); Rogers v. Greenwood, 14 Minn. 256 (333); In re Heath, 83 Iowa, 215; Pike v. Emerson, 5 N. H. 393; Bonney v. Morrill, 57 Me. 368, 372; McLeran v. McNamara, 55 Cal. 508; Shaw v. Henderson, 7 Minn. 386 (480); Eidam v. Finnegan, 48 Minn. 53.

The hypothetical question assumed a fact that was contrary to the pleadings as well as the evidence. Vosburg v. Putney, 80 Wis. 523; Prentis v. Bates, 88 Mich. 567. Hypothetical questions must be based on facts admitted or established, or which if controverted might legitimately be found by the jury. Matter of Mason, 60 Hun, 46. The court should have exercised its discretion on the question of ordering the examination. Schroeder v. Chicago, 47 Iowa, 375, 378; Hall v. Incorporated, 99 Iowa, 698; Barker v. Town, 67 Iowa, 146; White v. Milwaukee, 61 Wis. 536, 540; Hatfield v. St. Paul & D. R. Co., 33 Minn. 130; Atchison v. Thul, 29 Kan. 466.

*E. H. Smalley,* for respondent.

The court had power to vacate the stipulation. Gerdtzen v. Cockrell, 52 Minn. 501; G. S. 1894, § 5267. It had a right to submit the case to the jury on its own motion under section 5361. Hulett v. Carey, 66 Minn. 327, 332; Cobb v. Cole, 44 Minn. 278 Such stipulation during the course of the trial is not regarded as a contract. Cochran v. Stewart, 66 Minn. 152. Had defendant incurred expense, or assumed liability, or acquired intermediate rights, it would have been fair that he be placed in statu quo. Wells v. Penfield, 70 Minn. 66. The exclusion of the evidence on cross-examination of plaintiff's medical expert was proper. Kreuziger v. Chicago, 73 Wis. 158; People v. Hall, 48 Mich. 482; Stilling v. Town, 54 Wis. 528; Knoll v. State, 55 Wis. 249; 2 Rice, Ev. 1255.

Denial of the application for an examination was proper. Union Pac. Ry. Co. v. Botsford, 141 U. S. 250; Illinois C. R. Co. v. Griffin, 25 C. C. A. 417; Peoria v. Rice, 144 Ill. 227, 229; Joliet v. Call, 143 Ill. 177; McQuigan v. Delaware, 129 N. Y. 50; O'Brien v. City, 99

Wis. 421; Shepard v. Missouri, 85 Mo. 629; Sioux City v. Finlayson, 16 Neb. 578. Injury from burning by such examination was possible. Boelter v. Ross, 103 Wis. 324, 79 N. W. 243.

MITCHELL, J.

This is an action against the defendant for malpractice as a physician while professionally treating the plaintiff for certain injuries which he had received by being thrown from a moving hand car. The allegations of the complaint as to the injuries which plaintiff had received were

"That by reason of said cause plaintiff was seriously injured in the neck, back, side, shoulders, and spine, and in particular the vertebra of the spinal column in the vicinity of the neck was dislocated by said injury."

The malpractice charged against the defendant was that he

"So negligently and unskilfully conducted himself, in attempting to heal said injury and to set said dislocation, that the said dislocation of said vertebra in said spinal column became permanent, and the plaintiff rendered helpless and permanently maimed and crippled for life; that said defendant wholly failed and neglected, while so in charge of plaintiff as his patient, to ascertain by careful examination the said dislocation, and cure the said injury in the said spinal column; that the said vertebra in the spinal column ossified, and became and it is impossible, without great danger of death ensuing to plaintiff thereby, to cure or set said dislocation of the said vertebra."

In his answer the defendant denied

"That the vertebra of the spinal column in the vicinity of the neck, or in any other place, was dislocated," and admitted "that he failed to set said dislocation because no such dislocation existed."

Upon the trial the principal contentions of the plaintiff, and to which his evidence was mainly directed, were (1) that he had sustained a dislocation of the cervical vertebræ; (2) that defendant ought, in the exercise of ordinary professional skill, to have discovered that fact; and (3) that the proper treatment in such a case would have been to reduce or set the dislocation. On the other hand, the contentions of the defendant, to which his evidence was principally directed, were (1) that the plaintiff had not sustained

any dislocation of the cervical vertebræ, but merely a sprain, accompanied with contusion of the spine; and (2) that, even if plaintiff had sustained a dislocation of the cervical vertebræ, what is termed the "expectant" method of treatment is the proper one, and that, because of the great danger of injuring the spinal cord, a reduction of a dislocation should not be attempted, except as a last resort, in cases where it is apparent that death will otherwise ensue.

A medical expert called as a witness by the plaintiff gave in his examination in chief a diagnosis of the injury which in his opinion the plaintiff had sustained, viz. a dislocation of the cervical vertebræ, complicated with a fracture. He was then asked what was the accepted method, as laid down by the medical authorities, of treating a dislocation of the cervical vertebræ, and answered that it consisted of reducing the dislocation, followed by a course of treatment not necessary to be here referred to. On cross-examination the witness was referred to a medical work, admitted by him to be a standard authority, and asked if it was not laid down by that authority that, when the dislocation is complicated with a fracture, no doctor would be justified in attempting to press and reduce the dislocation. Upon the objection of the plaintiff, the question was excluded. This was manifest error, in view of the witness' previous diagnosis of plaintiff's injury, followed by his testimony, without limitation or qualification, that reduction was the accepted method of treating a dislocation of the cervical vertebræ, as laid down by the medical authorities. From the colloquy on the trial between court and counsel, it is apparent that the former misapprehended the bearing and purpose of the question.

The same witness was asked, and, over defendant's objection, permitted to answer, the following hypothetical question:

"Assuming that the plaintiff received a dislocation of a cervical vertebra September 30, 1894; that the defendant commenced to treat him the following day, and, with the evidence of such dislocation brought to his attention, he continued to treat the plaintiff for over two months, and no attempt made to reduce the dislocation, or even a suggestion by the doctor that there was a dislocation, he having knowledge of such injury,—would you consider that proper medical treatment?"

His answer was, "No." This was also error. All hypothetical questions must be based upon facts admitted or established, or which, if controverted, might legitimately be found by the jury from the evidence. Such a question should embody substantially all the facts relating to the subject upon which the opinion of the witness is asked, since the opinion of the witness is worthless, and may be misleading, if given on a state of facts that does not exist, or upon an incomplete statement of the facts bearing upon the subject upon which the opinion of the witness is asked. The evidence in this case tended to show that dislocation of cervical vertebræ might be of different degrees, or at least accompanied or unaccompanied by certain complications, such as a fracture, and that the dislocation sustained by plaintiff was complicated with a fracture, and that the treatment of a dislocation might depend on the presence or absence of certain complications. The question propounded was based upon an incomplete hypothetical statement of facts. It was also based in part upon a hypothetical fact which was neither admitted nor sustained by any evidence in the case, to wit, that the defendant knew that the plaintiff had sustained a dislocation of the cervical vertebræ. On the contrary, the evidence is conclusive that the defendant did not know that plaintiff had received any such injury. And plaintiff, both in his pleading and upon the trial, proceeded upon the theory that defendant's failure to discover the dislocation was due to either his lack of skill, or his failure to make a proper examination.

On account of these errors there must be a new trial, but, in view of such trial, there are two other questions which should be considered:

The case was one in which the parties were entitled to a jury trial. On February 23, 1897, when an adjourned or special term of the district court for Houston county was in session, at which it seems to have been expected that this case would be reached for trial, the attorneys for the respective parties signed and filed a stipulation waiving a jury, and consenting that the case might be tried by the court. The term of court then in session was adjourned until April. The plaintiff applied to the court to set aside this stipulation, and set the case for trial to a jury at the April special term,

to be held on the 27th of that month. The ground on which this was asked was, in substance, that the stipulation waiving a jury was entered into solely with reference to the then existing exigencies, arising out of the fact that it was then supposed that, if the case was to be tried to a jury, it would be necessary for the plaintiff to keep a large number of witnesses in attendance at large expense, and also because, if a jury was not waived, he might be compelled to move for a continuance on account of the nonarrival of a certain deposition, and that these exigencies had all been removed by the court's ordering the jury to return at the April special or adjourned term. The April term closed without the case being reached, and it went over to the regular term the following October. The judge never made any formal disposition of plaintiff's motion, but on April 15 he wrote to the attorneys that he thought the case was one which ought to be tried by a jury, and not by the court, and that they had better be prepared accordingly. When the cause was reached for trial at the October term, the court, at the request of the plaintiff, and against the objection of the defendant, ordered the case to be tried to a jury. This is assigned as error.

The authorities are generally, if not uniformly, to the effect that the court may disregard the waiver of a jury by the parties, and, on his own motion, require the issues of fact to be submitted to a jury; that this is a matter addressed to his sound discretion. Burke v. Breazeale, 1 Rob. (La.) 73; McCarthy v. Missouri, 15 Mo. App. 385; Bullock v. Consumers (Cal.) 31 Pac. 367. The authorities seem to be also to the effect that a waiver of jury trial, so long as not yet acted on, may be withdrawn, with the consent of the court, and a trial by jury demanded, at least where the withdrawal will not prejudice the opposite party. All that is decided in State v. Bannock, 53 Minn. 419, 55 N. W. 558, is that the waiver cannot be recalled at will, or as a matter of right. The law zealously guards the right of trial by jury. Waivers of the right are always strictly construed, and are not to be lightly inferred, or extended by implication. It is reasonably apparent that the waiver of a jury in this case was made only with reference to the exigencies of the then current term of court, and should not be extended so as to apply

to a subsequent term. The action of the court in ordering the case to be tried to a jury may be sustained on any of these grounds.

During the progress of the trial the defendant introduced the testimony of a medical expert, tending to prove that the nature of the injury to plaintiff's neck could be ascertained by the application of the Roentgen (commonly called "X") rays, that the witness had some experience in the use of these rays in surgery, and that no evil effects would result from their use, except that, if there was a very long exposure of the parts to the rays, there might be a burn ing of the skin, but that there would be no necessity for any such prolonged exposure for the purpose of taking a photograph of plaintiff's neck. On this showing, defendant's counsel then requested the court to give him "the privilege of taking an X-ray photograph of plaintiff's neck." Although peculiarly worded, this must be construed as asking the court to require the plaintiff to submit his neck to the X-rays for the purpose of taking a photograph of it. The court's refusal to so order is assigned as error.

The discovery of the X-rays is comparatively recent. Its utility and the reliability of its results are already so well established as scientific facts that courts ought to take judicial notice of them. And, if the fact that the exposure of the person to these rays is harmless becomes as well established in science as is the accuracy of photographs taken by them, there is as much reason why, in a proper case, under proper safeguards, and at the reasonable request of the defendant, the plaintiff should be required, in a case like the present, to submit his neck to those rays for the purpose of photo-graphing it, as there is for requiring a party to submit his person to a physical examination, as in Wanek v. City of Winona, supra, page 98. Whether science is as yet sufficiently advanced on the subject so to hold may admit of doubt, and a person cannot be required to submit his person to any process which is liable to injure him. It is impracticable to stop the trial in order to ascertain by evidence whether the exposure of a part of the human body to these rays is liable to result in injury. Moreover, if any such practice should obtain, there would be no uniform rule on the subject, as each case would depend on the evidence introduced, and the conclusion which the particular judge would draw from

it. Hence a party ought not to be required to submit his person to the X-rays until it is so well established as a fact in science that the process is harmless, that the courts will take judicial notice of it. It may admit of doubt whether that time has yet arrived.

But, without passing upon that question, we are of the opinion that defendant's request was properly refused for two reasons: (1) That the request was not seasonably made; and (2) that it did not sufficiently appear that the person by whom the defendant desired, the photograph to be taken had the necessary skill or experience properly and safely to apply the rays without injury to the plaintiff.

Order reversed, and a new trial granted.