## OLE LANDRO v. GREAT NORTHERN RAILWAY COMPANY.[1]

April 26, 1912.

Nos. 17,480—(45).

**Damages excessive.**

A verdict for $12,500 in this case *held* excessive, and reduced to $8,000, consent to which reduction is made a condition for denying a new trial.

**Evidence.**

The exhibition of plaintiff's person to the jury, and the experiments conducted therewith, referred to in the opinion, as well as the cross-examination of defendant's expert witnesses in the manner referred to, criticised, but *held*, under the circumstances of this case, not to be prejudicial error.

**Remarks of counsel not prejudicial.**

Certain remarks of counsel in his address to the jury *held* not to constitute prejudicial error.

[1] Reported in 135 N. W. 991.

---

[Note] Power to compel plaintiff in a suit to submit to a physical examination, see note in 23 L.R.A.(N.S.) 463.

After the former appeal reported in 114 Minn. 163, the action was tried before Grindeland, J., and a jury which returned a verdict in favor of plaintiff for $12,500. From an order denying defendant's motion for a new trial, defendant appealed. Affirmed.

J. D. Sullivan, for appellant.

G. Halvorson, Julius J. Olson and Charles Loring, for respondent.

Bunn, J.

The first trial of this case resulted in a verdict of $6,500, which this court held so excessive that it could not be accounted for, except on the ground of passion and prejudice. Landro v. Great Northern Ry. Co. 114 Minn. 162, 165, 130 N. W. 553. The second trial resulted in a verdict of $12,500, and this appeal is from an order denying a new trial.

Defendant admits liability in some amount, but insists that the verdict is grossly excessive, and that there were prejudicial errors on the trial. The facts as stated in the decision on the former appeal need not be restated. The second trial was in June, 1911; the accident, in February, 1909. The lapse of time between the accident and the trial is alone sufficient to make the case different from the case presented on the first trial, had before it was possible to judge whether plaintiff's injuries were permanent, or whether they could be cured or helped by treatment.

As the record now stands, a clean question of fact is presented, both as to the nature and as to the probable duration of plaintiff's injuries. Medical experts of high repute gave their opinion that plaintiff was suffering from a partial dislocation of the sacro-iliac joint, and that it was permanent. Medical witnesses of equally high standing were positive that there was no dislocation. But clearly the evidence is such that the verdict of the jury is final on this question. We must accept it as established, therefore, that there is this dislocation, that it has been and will be to some extent painful, and that it probably cannot be cured. But there is no visible deformity. Plaintiff weighs practically as much as before the accident, his appetite is perfect, and he sleeps well. He cannot walk much, and his

capacity for certain lines of employment that require physical exertion has been seriously impaired. In short, accepting, as we must, the testimony of plaintiff and his witnesses, the injury is a serious one, and entitles plaintiff to substantial compensation.

But we cannot avoid the conclusion that $12,500 is considerably more than fair compensation. Giving full weight to the verdict, and to the decision of the trial court refusing to disturb it, we still feel that the amount is excessive, and that we ought to make an effort to correct the injustice that has been done, and at the same time, if possible, end the case. Another trial will be an additional expense to both parties, and the result might be even less satisfactory than the verdict here. We think that $8,000 will be ample compensation to plaintiff, and that it is the limit that should be permitted on the evidence before us.

It is this desire to end a vexatious litigation, and the fact that there must ultimately be a recovery in some amount, that leads us to the conclusion that the errors alleged were not so plainly vital and prejudicial as to require a new trial; but we must not be understood as giving our approval to the exhibition of plaintiff's person before the jury, and the experiment made to show the presence of symptoms claimed by plaintiff's experts to indicate dislocation of the joint, including groans by plaintiff.

It is within the discretion of the trial court to permit a plaintiff in a personal injury case to exhibit his injuries to the jury, in order to show their extent or to enable a surgeon to demonstrate their nature and character. Hatfield v. St. Paul & Duluth Ry. Co. 33 Minn. 130, 22 N. W. 176, 53 Am. Rep. 14; Clay v. Chicago, M. & St. P. Ry. Co. 104 Minn. 1, 115 N. W. 949. It is also discretionary to permit tests and experiments in the presence of the jury in a proper case and under proper safeguards. But where there are no wounds, no injuries that can be seen by the jury, it is improper to permit the exhibition of plaintiff's person for the purpose of conducting experiments to prove that he will cry out with pain, or that his muscles will grow rigid when his legs are manipulated in a certain manner. It was a hotly disputed question whether plaintiff had

any "objective" symptoms; but it is quite clear that he had none that could be seen by the jury. Trial courts should always exercise this discretion with caution, and when it appears that the probable effect of the exhibition will be, not to instruct the jury as to the nature and extent of the injuries, but to excite their sympathies or inflame their passions, it should not be permitted.

The trial court permitted the cross-examination of defendant's expert witnesses as to opinions expressed by a standard authority contrary to those given by the witnesses. Of course, medical books, however celebrated their authors, are not admissible in evidence, because the author is not under oath, and not subject to cross-examination. But, for the purpose of testing the qualifications, as well as the credibility, of an expert, it is generally held, as in Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L.R.A. 141, that when the witness has testified that the authorities support his view, he may be asked on cross-examination whether a medical work, admitted by him to be a standard authority, does not express a contrary view. And it is no objection to such cross-examination that incidentally the opinions of the author are thus brought before the jury. Theoretically the author's opinions are not substantive evidence but are merely impeaching evidence.

It is, however, open to serious doubt whether the cross-examination in the case at bar should have been permitted, at least to the extent it was. It was admitted by all the experts that it was a disputed question among the authorities whether the sacro-iliac joint in a man was fixed or movable. The result of reading to the witnesses extracts from the work of an admittedly great surgeon and authority was to get this evidence before the jury, not merely to impeach the testimony of defendant's witnesses, and it was clearly impossible for the jury to distinguish between substantive and impeaching testimony. The purpose and probable effect of such a cross-examination should be carefully considered by the trial court. In view of our disposition of the case, we hold that the error, if any, was not prejudicial.

The reference of plaintiff's counsel, in his address to the jury, to

the power of this court to reverse the action of the jury, or reduce the verdict, and to its want of power to "make us take what they want to give us," was not legitimate argument; but, in view of the instruction given to the jury to disregard these remarks, we think there was no prejudicial error in this regard.

It is ordered that the order appealed from be reversed, and a new trial granted, unless plaintiff shall, within ten days after the remittitur is returned to the court below, file a written consent to a reduction of the verdict to $8,000, in which event the order appealed from will be, and it is, affirmed.