# HERMAN RIEF v. GREAT NORTHERN RAILWAY COMPANY.[1]

July 17, 1914.

Nos. 18,642—(175).

**Injury to servant — evidence of void agreement.**

1. The uncontradicted evidence showed plaintiff to be an employee and not a licensee, hence no prejudice from excluding an agreement void as between employer and employee under the Federal Employer's Liability Act, which applies to the cause of action.

**New trial because of excessive verdict.**

2. In a personal injury action tried within two months after a claimed serious and unexpected permanent malady developed, where the evidence as to permanency was regarded so unsatisfactory to the trial court that the verdict was considered excessive to the extent of one-half, a new trial should have been granted instead of the reduction.

**Right to make physical examination.**

3. The court erred in not permitting a second physical examination, the defendant having been misled by plaintiff in the first examination as to the injury claimed.

Action in the district court for Swift county to recover $20,000 for personal injury received while in the employ of defendant. The answer set up that plaintiff was a mere licensee upon defendant's train, at the special instance and request of plaintiff, to enable him to become familiar with the duties of a brakeman, and that, for the purpose of being permitted to ride upon defendant's trains, plaintiff for a valuable consideration executed the written agreement mentioned in the opinion. The case was tried before Powers, J., who when plaintiff rested denied defendant's motion for a dismissal

[1] Reported in 148 N. W. 309.

Note.—The authorities on the question of the power to compel plaintiff to submit to a physical examination are reviewed in notes in 14 L.R.A. 466 and 23 L.R.A.(N.S.) 463.

of the action and at the close of the testimony denied defendant's motion for an instructed verdict, and a jury which returned a verdict for $16,000 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial if defendant consented to a reduction of the verdict to $8,000, defendant appealed. Reversed and new trial granted.

*M. L. Countryman* and *A. L. Janes,* for appellant.
*John I. Davis* and *Davis & Michel,* for respondent.

HOLT, J.

On the tenth of September, 1913, plaintiff, in attempting to descend from a box car to throw a switch, was struck by a cattle chute which, it is claimed, was negligently constructed too near the track, of which fact plaintiff was not informed. Plaintiff received and was treated for a fractured arm, and also claims other injuries. A verdict of $16,000 was awarded. Defendant moved for judgment notwithstanding the verdict, and in case of denial thereof, for a new trial. The court denied the motion on condition that plaintiff consented to a reduction of the verdict to $8,000. The defendant appeals.

For 12 days previous to his injury plaintiff had been upon the defendant's freight trains as a student brakeman under the following written agreement signed by him: "I, the undersigned, state that I am at least twenty-one years of age and desirous of qualifying myself to perform the service of brakeman and for that purpose do hereby apply to the Great Northern Railway Company for the privilege and opportunity of learning the duties pertaining thereto.

"I understand and fully appreciate the dangers and risks of personal injury incident to railway operation, and, in consideration of said company granting to me the privilege, license and permission to enter upon its property, trains and cars, for the purpose of learning and familiarizing myself with the duties required of a brakeman, I hereby assume all such hazard and risk of personal injury and damage, whether such injury or damage are the result of my own negligence, inexperience or lack of knowledge, or are in any manner caused by the negligence of said company, defects in its premises

or in any of its instrumentalities, or by the negligence, carelessness or misconduct of any of its officers, agents or employees, and agree to fully indemnify and save harmless said company from any and all claims for any such injuries received or damages sustained by me; it being fully understood and agreed by me that while learning the duties and requirements of such position I shall receive no compensation and in no sense be deemed a servant or employee of said company, but merely a licensee upon its property, trains and cars for my own personal benefit and education, the license to be revoked at any time at the option of the company."

The court held that plaintiff was an employee of the defendant as a matter of law, and since it was admitted that the train from which plaintiff fell was engaged in interstate traffic, the court excluded the contract as void and of no effect under the Federal Employer's Liability Act (Act April 22, 1908, c. 149, 35 St. 65 [U. S. Comp. St. Supp. 1911, p. 1322]). We think there was no prejudicial error in the ruling. For, although there is nothing in the contract itself indicating that plaintiff as student brakeman was to render any service whatever for defendant, the testimony conclusively shows that he was expected to perform, and did perform, such tasks as were assigned him by the members of the crew in charge of the trains. He helped load and unload freight at way-stations, threw switches and did whatever he was ordered to do in the operation of the train. Under the following decisions he was an employee and not a licensee. Weisser v. Southern Pac. Ry. Co. 148 Cal. 426, 83 Pac. 439, 7 Ann. Cas. 636; Huntzicker v. Illinois Cent. Ry. Co. 129 Fed. 548, 64 C. C. A. 78, and Atchison, T. & S. F. Ry. Co. v. Fronk, 74 Kan. 519, 87 Pac. 698, 11 Ann. Cas. 174. We are cited to no decision to the contrary, and have found none.

The plaintiff was taken to a hospital after his injury and the fractured arm set and placed in a plaster cast. He complained of no other pain or injury, according to his own testimony, until two weeks after the accident, when he states that he at one time told the physician that one of his hips pained him, and that he had headaches. When the cast was removed he insisted on leaving the hospital, but was told by the doctor to come back daily for the necessary

treatment, so that the arm might be restored to normal vigor and movement. Plaintiff came the next day but not thereafter. In a few days he left for another town, where one of his attorneys resided, and then went to his parent's home in Nebraska until the trial, which began November 18, 1913. After he left the hospital no doctor was consulted and no treatment taken for the arm or for any other ailment. Just before the trial plaintiff submitted to a physical examination at the hands of four physicians and surgeons, who testified for defendant. The complaint alleges "that his left shoulder and arm were broken and he received severe and permanent injuries in and about his arms, neck, elbow, shoulders, back and spine, and that by reason of said accident plaintiff has sustained a severe and permanent shock to his nervous system, and that his general health has been and will be greatly impaired by reason thereof; that plaintiff also received a permanent internal injury and severe and permanent injuries, the extent and precise nature of which he is unable to more fully state." When plaintiff was being examined physically by the defendant's doctors, one of them in manipulating the injured arm asked plaintiff whether he had any pains elsewhere and he answered in the negative. Consequently no effort was made to examine with a view to ascertain any defect in the spine or sacro-iliac joint, where the two medical experts of plaintiff subsequently by their testimony located what they concluded to be the serious injury. Immediately upon this claim being disclosed, defendant's counsel asked for permission to again examine plaintiff physically. The court denied the request, although it was made to appear that an examination could have been had without delaying the trial or inconveniencing plaintiff.

The facts of this case present a situation where this observation as to the duty of the trial court is pertinent: "Having reached the conclusion that the verdict should be reduced one-half, the trial court should have gone one step further and ordered a new trial." Germann v. Great Northern Ry. Co. 114 Minn. 247, 130 N. W. 1021. The trial was had barely two months after the injury. In the nature of things complete recovery of the fracture was hardly to be expected. There is nothing in the evidence showing a

126 M.—28.

substantial permanent injury to the arm. While in the hospital neither plaintiff nor physician in charge suspected any other injury from the accident except such as might be the consequence of the fracture. If any hidden or unsuspected malady resulted from the fall, the manifestations thereof had existed for such a comparatively short time that whether it would be permanent or temporary was almost wholly speculative when the trial was had. Clearly the verdict is grossly excessive even as reduced, unless serious permanent injury results. In view of the history of the case, the location of the injury claimed, and the short time that had elapsed since it was discovered, we think the jury had no adequate basis for finding that there was reasonable certainty that permanent injuries were either received in the arm or the sacro-iliac joint.

Compelling a plaintiff in a personal injury action to submit to a physical examination is largely within the sound discretion of the trial court. Wanek v. City of Winona, 78 Minn. 98, 80 N. W. 851, 46 L.R.A. 448, 79 Am. St. 354. And where one examination has been had, a refusal to grant a second will not ordinarily be sufficient grounds for a new trial. But we think the circumstances here are unusual. Of course one familiar with personal injury actions knows that a defendant must be prepared to meet injuries and shocks to the nerves and nervous system, for that is almost always alleged and attempted to be proven. But these and other allegations involving the whole body must be considered reasonably when applied to the facts of each case. It is perfectly plain that when plaintiff was examined neither defendant nor any of its medical experts, one of whom was the surgeon who set the arm and had plaintiff under observation and treatment for a month, suspected that he suffered or would claim any evil results from the fall, except such as might be traced to the fractured arm. Moreover during this examination plaintiff himself, as above noted, led them to believe that none other was claimed. Although the sacro-iliac joint is deep-seated and injuries thereto correspondingly difficult to detect, one of plaintiff's experts claimed that he had located an injury by touch. If he could do so, it stands to reason that defendant's medical experts could also detect it, or else demonstrate that the

asserted protuberance was not there. Trials of lawsuits are for the purpose of bringing all the facts truthfully before the court and jury. And if one side through no fault of his own has, by the conduct of the other, been misled or placed in a position where he cannot fully meet a claim which he could not have anticipated, the court should afford him a reasonable opportunity to maintain his rights. The injury to the sacro-iliac joint for the first time asserted upon the trial was much akin to the ones asserted in Johnson v. Great Northern Ry. Co. 107 Minn. 285, 119 N. W. 1061, and Landro v. Great Northern Ry. Co. 114 Minn. 162, 130 N. W. 553, again reported in 117 Minn. 306, 135 N. W. 991, Ann. Cas. 1913D, 244, in so far as difficulty of diagnosis is concerned. Hence when a physical examination was required, or needed, it should have been fair, so that the defendant's medical experts when making it would have had some knowledge of the location and nature of the injuries or ailments which plaintiff claimed to have resulted from the accident.

The order in so far as it relates to a new trial is reversed and a new trial is granted.