FRED J. MOEHLENBROCK v. PARKE, DAVIS & COMPANY AND OTHERS.[1]

November 29, 1918.

No. 21,034.

**Assignments of error — references to printed record.**
    1. The assignments of error and appellant's brief should refer to the place in the printed record where the challenged ruling may be found.

**Witness — cross-examination of hostile witness.**
    2. Appellant and the other defendants, two doctors, occupied antago-

[1] Reported in 169 N. W. 541.

nistic positions, to a certain extent, in that plaintiff charged that the separate and distinct acts of negligence of the appellant in furnishing unfit anaesthetic ether, and of the doctors in administering the same, in operating on plaintiff's intestate, caused and contributed to cause his death. And because of such antagonistic positions appellant was accorded a wide range in cross-examining the doctors, even though called by plaintiff for cross-examination, and no just complaint can be made that appellant was unduly restricted in this respect.

### Witness — cross-examination after party has rested.

3. The doctors offered no evidence, resting when plaintiff rested. The court ruled correctly, that after they had so done. appellant could not call them for cross-examination. If it desired their testimony they should have been called as appellant's witnesses.

### Cause of death — opinion evidence of attending surgeon.

4. A doctor who has examined a person or has noted his appearance at the time such person. goes upon the operating table, who has performed the operation or has been present thereat, who has observed the effects of the anaesthetic administered, and who has been present at intervals until death ensues, is competent to express an opinion as to the cause of death. This is so, even if the doctor admits that the opinion expressed has been corroborated by the information he has obtained from others as to a subsequent analysis of the ether.

### Evidence — identity of ether.

5. The identification of the ether analyzed as that administered to plaintiff's intestate and to a patient of Dr. Liedloff the next day was sufficient.

### Same — analysis of ether.

6. The evidence furnished a proper foundation for the introduction of the testimony concerning the analysis of a can of ether by Professor Hortvet and the opinion of experts based thereon.

### Introduction of textbook in evidence harmless error.

7. It was error to admit, over objection, pages from a standard textbook, the general rule being that scientific works are inadmissible as substantive evidence, either on direct or cross-examination. But the error must be held harmless for it is not pointed out, nor is it apparent, that the pages so received were at variance with other standard authors read to the jury, by consent, or with the expert testimony of appellant.

**Experiments and demonstrations discretionary with court.**

8. The admission of experiments and demonstrations is within the discretion of the trial court.

**Negligence of surgeon — imputed negligence — joint enterprise.**

9. The negligence of the surgeons operating cannot be imputed to the patient, so as to relieve a third party whose negligent act has contributed to the patient's injury. Nor is the patient as to such third party engaged in a joint enterprise with the surgeons.

**Concurring negligence not a defense.**

10. The concurring negligence of one not a party to this suit is not a defense.

**Variance.**

11. There is not a fatal variance between the complaint and the proof in respect to appellant's responsibility for the ether used.

**Pleading and proof of negligence.**

12. The jury found concurring negligence; but, even if the evidence did not justify a verdict against the doctors, the allegations of the complaint are such that, when supported by proof of appellant's negligence, a recovery against it alone can be had.

**Charge to jury.**

13. No reversible error is found in the charge.

**Verdict sustained by evidence.**

14. The verdict cannot be said to rest upon inferences, there is direct and circumstantial evidence to prove the facts involved in the verdict.

**Appeal and error — excessive damages not reviewable.**

15. That the verdict is excessive was not raised in the court below, in the manner prescribed by subdivision 5 of section 7828, G. S. 1913, and is not presented by a proper assignment of error in this court.

Action in the district court for Blue Earth county by the administrator of the estate of Albert R. Moehlenbrock, deceased, against Parke, Davis & Company, a corporation, John P. Rosenwald and Roy M. Andrews, to recover $7,500 for the death and funeral expenses of his intestate.

The complaint, among other matters, alleged that the individual defendants, as physicians and surgeons, undertook to operate upon the

intestate and for such purpose they administered to him certain ether as an anaesthetic which had been manufactured by defendant corporation as safe and suitable for such use; that the ether was in an unsafe, poisonous and deadly condition, was dangerous to human life and not fit for use as an anaesthetic, as defendant corporation knew or ought to have known, and by reason of its condition the use of the ether was one of the contributing causes of the death. It also alleged that the individual defendants disregarded their duty to perform the operation skilfully and without negligence, and so unskilfully and negligently administered the ether and performed the actual operation that the negligent and unskilful use of the instruments and ether was one of the contributing causes of the death of the intestate; that the negligent acts of the defendant corporation and the unskilful conduct of the individual defendants concurred in causing the death.

The separate answer of the defendant corporation specifically denied that it at any time manufactured, advertised and exploited as safe and suitable for use as an anaesthetic, or sold or placed on the market, any ether whatever save only ether intended to be used only by physicians, surgeons, dentists and veterinarians duly qualified and competent to determine in each instance whether it would be proper and safe to administer ether. The answer specifically denied that the death of the intestate was caused, or contributed to, by the presence in the ether of any ingredient which it should not have contained.

The case was tried before Comstock, J., and a jury. When plaintiff rested the motion of defendant corporation for dismissal of the action or for a directed verdict was denied, as was the motion of defendant corporation for a dismissal of the action against the individual defendants or for a directed verdict in their favor. At the close of the testimony motions for directed verdicts in favor of the various defendants were denied. The jury returned an affirmative answer to the question whether defendant corporation was negligent in the preparation and marketing of the ether administered to the intestate, and to the question whether the death of the intestate was due to the negligence of the individual defendants, and returned a general verdict for $5,000 in favor of plaintiff. From an order denying its motion for dismissal of the action, or for judgment notwithstanding the verdict, or for a new

trial, defendant Parke, Davis & Company appealed.     Affirmed.
  *Daniel Carmichiel* and *Charles M. Woodruff,* for appellant.
  *Leach & Leach,* for respondent.

HOLT, J.

On March 26, 1914, while being operated on for the removal of his
tonsils, plaintiff's intestate died. This action was brought, in behalf of
the next of kin, against the two doctors who performed the operation
and against Parke, Davis & Company, the manufacturer of the ether
used, alleging that the death was caused by the negligence of the de-
fendants. The verdict was against all. Parke, Davis & Company made
a separate motion for judgment notwithstanding the verdict or a new
trial. The appeal is from the order denying the motion.

It is not possible to notice each of the 128 errors assigned in this rec-
ord without unduly extending the opinion. All have been examined,
but only those deemed meriting attention will be discussed or referred
to. Before so doing we must call attention to an omission of appellant's
counsel to conform to the usual practice of noting in the assignments
of error, and in the brief, the page or folio in the printed record where
the error assigned or discussed may be found and examined. Here the
assignments of error merely refer to the folios in the printed record where
the motion for a new trial is found; and the references in the motion
are to the folio or page in the settled case filed in the district court, and
not to the folio or page in the settled case as printed. The purpose of
the rule, requiring a printed record, is that each member of the court
may therein find what did take place relating to the ruling upon which
error is assigned. The rule should be observed in such a manner that
its purpose may be attained, and especially in a case of the kind now be-
fore us where the printed record contains over 1,300 pages and appel-
lant's brief nearly 400.

Plaintiff's intestate, Albert R. Moehlenbrock, was a young man, 21
years old, robust and apparently in good health except for diseased ton-
sils. He received a few simple treatments for the ailment from Doctor
Rosenwald, and then, as a cure, an operation was resorted to. Dr.
Rosenwald operated and Dr. Andrews administered the anaesthetic, us-
ing a brand of ether manufactured by Parke, Davis & Company. While

the ether was being given, it was noticed that the patient became cyanotic, and it was necessary to stop and revive him to some extent before proceeding. After the tonsils were removed, he lapsed into the same condition several times, and finally, within about three hours from the commencement of the operation, all efforts to revive him failed and he died. Plaintiff claims that the doctors contributed to the fatal result by their negligence in the administration of the ether, and that Parke, Davis & Company also contributed thereto by its negligence in manufacturing and placing impure and dangerous ether upon the market for anaesthetic purposes. Under the charge thus made, of distinct and differing acts of negligence concurring to bring about Moehlenbrock's death, the doctors and the company were placed in a peculiar, antagonistic position; for, in addition to other defenses, it was a good defense for the doctors to show that the fatal outcome was due wholly to impurities in the ether, a defect they could not anticipate; and for the company to show the carelessness of the doctors as the sole cause. That made the defendants, in a measure, adverse parties to each other. And many assignments of error by Parke, Davis & Company relate to claimed restrictions on its cross-examination of the doctors, and of a too liberal method of cross-examination of the doctors by plaintiff. We think there was such full and fair cross-examination allowed all parties, at one time or another during the lengthy trial, that no reversible error can be pointed out in relation to this phase of the case.

The doctors rested their case upon plaintiff's evidence, and the court would not permit Parke, Davis & Company to call them for cross-examination in making its defense. But we see no prejudicial error here, for the doctors had been thoroughly cross-examined by appellant when they were called to the stand by plaintiff, and Parke, Davis & Company had also the privilege to call them as its witnesses.

Complaint is also made of the rulings allowing the defendant doctors to express an opinion as to the cause of death, confirmed, as they admitted it was in part, by after-acquired information concerning an analysis of ether made by Mr. Hortvet. We think there was no error here. The doctors observed and examined the man, to a certain extent, before the operation began; they noted the effects of the ether upon him, and were present frequently at intervals until death came. As professional men,

they were competent to express an opinion as to the cause of death. The value of that opinion was for the jury, they determining whether the doctors were justified in relying for corroboration, of the opinion expressed, upon the impurities testified to by Mr. Hortvet being present in the ether as administered to Moehlenbrock. We think the position of these expert witnesses on the cause of death is entirely different from that of the experts whose opinion was sought in Briggs v. Minneapolis & St. L. Ry. Co. 52 Minn. 36, 53 N. W. 1019. Nor is the after-acquired information of the analysis, which the doctors considered as corroborative of their opinion, here subject to the objection voiced in Miller v. St. Paul City Ry. Co. 62 Minn. 216, 64 N. W. 554, and Johnson v. Quinn, 130 Minn. 134, 153 N. W. 267. The impurities to which the doctors referred were the ones so fully gone into by the testimony of Mr. Hortvet and the experts of this appellant, that there is no chance that they had any other in mind than those identified by Mr. Hortvet. Thompson v. Bankers Mut. Cas. Ins. Co. 128 Minn. 474, 151 N. W. 180, Ann. Cas. 1916A, 277. It may also be noted that the doctors stated that the opinion expressed was not based upon the Hortvet analysis, but that they considered their opinion corroborated by such analysis.

We think no erroneous rulings, prejudicial to appellant, occurred when Doctors Condit and Liedloff occupied the witness stand. There was sufficient evidence from which the jury could find that the ether administered to Dr. Liedloff's patient was out of the same can used upon Moehlenbrock, and that there had been no change in the condition of the ether during the 24 hours that elapsed between the two operations. Having so found, it would be proper, both for the experts and the jury, to consider the similarity in the effects of the ether upon the two patients in determining the cause of death. It is common knowledge that human beings are physically sufficiently near alike so that we may reason that when a drug or substance produces a marked effect on one person it will, to a certain extent, similarly affect another, taking into account age, strength and other conditions present. In fact the healing art is largely predicated upon this similarity of cause and effect in people.

Of course, the admissibility and value of the testimony of Mr. Hortvet, the chemist who analyzed a can of ether delivered to him by plaintiff, and of that of Professor Frankforter and Dr. Condit based upon

the result of that analysis, depend, in the first place, upon its being the can from which the ether used upon the deceased was taken, in the second place, upon the impurities in the ether being due to appellant's lack of due care, and, in the third place, upon the ether when analyzed being in approximately the same condition as when administered in the operation. We are quite clear that the evidence made the question of identity one for the jury. The experts agreed that the impurities found in the analysis may be produced from oxydization of the ether, and that oxydization begins as soon as air gets into the can and continues until the air is exhausted. Whether it was so negligently prepared or sealed as to account for the dangerous impurities, and whether it was so sealed and kept, after its use for both the Moehlenbrock and Liedloff operations, that no consequential air came into the can before the analysis took place was, in our opinion, also for the jury. Nothing of benefit to the legal profession will be gained by any attempted résumé of the evidence bearing on that point.

The ruling permitting Professor Frankforter to give his opinion as to whether the ether containing the amount of aldehyde of that analyzed was fit for anaesthetic use cannot be complained of by appellant, for, when finally answered, the witness was compelled to base his opinion upon the knowledge gained through experience, to the exclusion of that acquired by consulting authorities.

During the cross-examination of one of plaintiff's experts by the doctors' attorney, a few pages of Gwathmey's textbook, a standard authority on anaesthesia, so referred to and accepted by all the parties to the action during the trial, were admitted over appellant's objection. The general rule is that scientific works, with some exceptions not here pertinent, are inadmissible as substantive evidence either on direct or cross-examination. Respondent attempts to justify the ruling by a well recognized exception referred to in Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 14, and thus formulated in City of Bloomington v. Shrock, 110 Ill. 219, 51 Am. Rep. 678, viz.: "When, however, an expert assumes to base his opinion upon the work of a particular author, that work may be read in evidence to contradict him." This exception does not aid respondent, for the pages were not offered for the

141 M.—11.

purpose of contradicting prior statements of the witness. But the mere fact that these pages were erroneously admitted, does not necessarily mean a new trial. Our attention has not been called to anything in the evidence thus admitted at variance with those excerpts from two other works which, by consent, went to the jury, nor has appellant pointed out wherein anything said by Gwathmey in those pages prejudices appellant, or the theory of its defense, or differed at all from the testimony of its own experts.

The refusal to admit evidence of experiments, and of analysis of different cans and brands of ether, shows no abuse of that judicial discretion which is left to the trial court in such matters. The court might well have refused to strike from the record the statement of plaintiff's expert, that the doctors' attorney procured his services; but this ruling should not work a reversal in view of the affidavits presented by appellant on its motion for a new trial, for the jury undoubtedly observed what the affiants who attended the trial noted in respect to the relations between plaintiff and the defendant doctors. No other rulings on the exclusion or admission of evidence deserve special mention.

The claim is made that plaintiff failed to prosecute this action in good faith against the doctors, and that an unlawful conspiracy existed between them and plaintiff against appellant. The verdict against the doctors seems to be a complete refutation of the charge, even if such charge could avail as a defense.

The proposition that the negligence of the doctors, found by the jury, is imputed to Moehlenbrock, and defeats a recovery against defendant, although its negligence was a proximate cause of the death, strikes us as unsound and inapplicable. The doctors were not the agents or servants of their patient, so that their negligence could be considered his negligence, to be taken advantage of as a defense by one who, by an independent act of negligence, also proximately contributed to the injury. The cases cited by appellant do not support his contention, and the one where the facts are at all analogous points to a rule of law entirely opposed to that now contended for. Peterson v. Westman, 103 Mo. App. 672, 77 S. W. 1015. The situation of the parties here may be likened to that of a passenger on a train who is injured through the concurrent negligence of the railroad company carrying him and another person

or common carrier. Flaherty v. Minneapolis & St. L. Ry. Co. 39 Minn. 328, 40 N. W. 160, 1 L.R.A. 680, 12 Am. St. 654. The rule announced in Stafford v. City of Oskaloosa, 57 Iowa, 748, that if the driver with whom the plaintiff therein was riding, by his negligence contributed with the negligence of the defendant to produce the injury, no recovery could be had, also prevailing in Wisconsin (Lightfoot v. Winnebago Traction Co. 123 Wis. 479, 102 N. W. 30), is contrary to the law obtaining in this state. See Carnegie v. Great Northern Ry. Co. 128 Minn. 14, 150 N. W. 164, and the cases there cited. Appellant is not entitled to regard the operation as a joint enterprise on the part of Moehlenbrock and the doctors, so as to escape liability for its own negligence. In the actual conduct of the operation Moehlenbrock could take no conscious part. It was the joint enterprise of the doctors only.

We see nothing in the claim that concurring negligence of the hospital was shown so as to relieve appellant, as a matter of law. The jury could well find that the storing and handling of the ether from its purchase by the hospital to its use in the operation could not have produced the impurities which the evidence justified them in finding present. And, even though there be contributing or concurring negligence on the part of the hospital, it would not absolve appellant if its negligence also concurred as a proximate contributing cause of the death. Johnson v. Northwestern Tel. Exch. Co. 48 Minn. 433, 51 N. W. 225.

The next contention is that there is a fatal variance between plaintiff's complaint and his proof. We think there is no merit to the first point made in this connection, namely, that while the allegation is that appellant furnished the ether for the open market the proof showed that it was sold to the hospital. The manner in which the ether was put up and labeled clearly indicates that appellant held it out as a fit substance for anaesthetic uses by surgeons. We also hold that the evidence warranted the jury in finding that the ether when sold was not safe for that purpose, and that this condition was due to appellant's failure to use due care to assure its purity when sent forth for the intended use, and that the presence of the impurities, thus suffered to remain or form in the ether, contributed to or caused the death. It was not necessary to prove that this dangerous condition was known to appellant. It was its duty to know that the article it placed before the medical profession as fit for

anaesthetic use did not contain dangerous and unsafe impurities and was so put up that these impurities could not form in the container, when kept according to directions.

Appellant contends that the proof fails to substantiate the concurring negligence alleged in the complaint, and hence plaintiff must fail. He cites authorities to the effect that, when several acts of negligence are alleged as concurring to produce the injury, all must be proven or the verdict must go for defendant. Western Ry. of Ala. v. McPherson, 146 Ala. 427, 40 South. 924; Wormsdorf v. Detroit City Ry. Co. 75 Mich. 472, 42 N. W. 1000, 13 Am. St. 453, and also decisions holding that, by alleging that separate negligent acts of two or more defendants concurred in causing the injury, there can be no recovery if the negligent act charged against any one of the defendants is not proven, of which these are typical, viz.: St. Louis, B. & S. Co. v. Hopkins, 100 Ill. App. 567; Sturzebecker v. Inland T. Co. 211 Pa. St. 156, 60 Atl. 583; Forsell v. Pittsburgh & M. Copper Co. 38 Mont. 403, 100 Pac. 218. The last mentioned case, in an extended opinion, sustains this doctrine, which to many may seem one of refined technicality.

But we need not approve or disprove the law of the cases cited, for there are two all-sufficient reasons against appellant's availing itself of the benefit of the rule claimed. The verdict is against the doctors as well as against appellant. Hence the jury found concurrent negligence. Again, the allegations of the complaint, after setting out the specific negligence of appellant, charges that such negligence "contributed to and caused and was one of the contributing causes of his death," and like allegation is made in respect to the negligence charged against the doctors. Under this pleading, if the proof showed that Moehlenbrock's death was the proximate result of the negligence charged against one defendant alone, a recovery could be had against that one. The separate paragraph in the complaint alleging that the several acts of negligence of the several defendants concurred to cause the death may be disregarded. So that we think the complaint herein may be held to authorize a recovery even under these decisions relied on by appellant: Richmond v. City of Marseilles, 190 Ill. App. 227, and Pierson v. Lyon & Healy, 243 Ill. 370, 90 N. E. 693. And under our decisions, cited in 2 Dunnell, Minn. Dig. § 7006, there would seem to be no doubt that

the complaint is so framed that if the evidence shows that appellant's alleged negligence was a proximate cause contributing to or causing Moehlenbrock's death a recovery could be had, even though the negligence alleged against the doctors was not proven, or though it should appear that the negligence of other persons than the defendants concurred with that of appellant to bring about the result.

A great many exceptions are taken upon the charge of the court and the refusal to give certain requests. We find nothing here requiring discussion. The court was right in charging that the doctors, having rested their defense upon plaintiff's evidence, without introducing any of their own, the evidence thereafter received could not be considered by the jury in determining the doctors' liability to plaintiff, but should be considered upon appellant's defense only. Of course it was still open for appellant to show that the sole cause of death was the negligence of the doctors.

A great deal is said about the rule against basing an inference on other inferences in arriving at a conclusion. The jury had no occasion to violate the rule upon this record. Without indulging in inferences, and without invoking the doctrine of res ipsa loquitur (which we agree with appellant to be inapplicable in this case), there is, as already hereinbefore stated, evidence, direct and circumstantial, warranting the jury in finding that there were dangerous impurities in the ether administered to Moehlenbrock; that these existed because appellant had failed to use due care; that these impurities proximately contributed to cause the patient's death, and that such findings are based upon other facts established by like evidence, such as that the ether analyzed by Hortvet was part of the same can used in the Moehlenbrock operation and the one conducted by Liedloff the next day, and that there was no material change in the condition of the ether, caused by the way it was stored, handled or used, from the time it was sold by appellant until analyzed by Hortvet.

The damages are said to be excessive. The court below was not asked to review the action of the jury because of "excessive * * * damages appearing to have been given under the influence of passion or prejudice." We feel that this ground for a new trial was not properly made to the trial court, and no proper assignment of error brings the matter before

this court. Unless the question of excessive damages has been brought before the trial court on the ground prescribed in subdivision 5 of section 7828, G. S. 1913, it cannot be raised here.

The order is affirmed.