# HENRY RUUD v. J. F. HENDRICKSON.[1]

January 4, 1929.

No. 26,620.

See note in 40 L. R. A. 565, et seq; 10 R. C. L. 1164; 2 R. C. L. Supp. 1161.

*Orin M. Oulman,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre, R. A. Scallen* and *L. M. Staples,* for respondent.

[1]Reported in 222 N. W. 904.

TAYLOR, C.

This is an action for alleged malpractice in which the defendant had a verdict and the plaintiff appealed from an order denying a new trial.

The sole question presented by the bill of exceptions and the assignments of error is whether the court erred in permitting defendant to read extracts from medical works in framing questions asked plaintiff's expert on cross-examination. Plaintiff bases his claim of error on the ground that medical books are not admissible as substantive evidence of the facts therein stated, and that reading these excerpts was, in effect, placing the opinions of the authors before the jury.

Although it is well settled that medical works are not admissible as substantive evidence for the reason that the authors are not under oath nor subject to cross-examination, yet where a physician testifying as an expert bases his opinion, in whole or in part, on such works, he may be questioned on cross-examination as to views differing from his in books which he recognizes as authority, although it may incidentally place the views of the authors before the jury. Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141; Landro v. G. N. Ry. Co. 117 Minn. 306, 135 N. W. 991, Ann. Cas. 1913D, 244; Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541.

Although there are decisions of courts of high standing to the contrary, the weight of authority is to the effect that where a witness testifies as a medical expert, excerpts from books and publications recognized as authorities by his profession may be read in framing questions on cross-examination asked for the purpose of testing his knowledge and competency, the accuracy of his conclusions and the weight to be given to his opinions. Barfield v. South Highlands Infirmary, 191 Ala. 553, 68 So. 30, Ann. Cas. 1916C, 1097; Scullin v. Vining, 127 Ark. 124, 191 S. W. 924; Osborn v. Cary, 28 Idaho, 89, 152 P. 473; Connecticut M. L. Ins. Co. v. Ellis, 89 Ill. 516; Hess v. Lowrey, 122 Ind. 225, 23 N. E. 156, 7 L. R. A. 90, 17 A. S. R. 355; Stout v. Bowers, 97 Kan. 33, 154 P. 259; Travelers Ins. Co. v.

Davies, 152 Ky. 600, 153 S. W. 956; MacDonald v. Metropolitan St Ry. Co. 219 Mo. 468, 118 S. W. 78, 16 Ann. Cas. 810; Hutchinson v. State, 19 Neb. 262, 27 N. W. 113; Laird v. B. & M. R. R. 80 N. H. 377, 117 A. 591; Egan v. Dry Dock E. B. & B. R. Co. 12 App. Div. 556, 42 N. Y. S. 188; State v. Brunette, 28 N. D. 539, 150 N. W. 271, Ann. Cas. 1916E, 340 (opinion on reargument); Byers v. R. R. 94 Tenn. 345, 29 S. W. 128 (the expert was an engineer); Clukey v. Seattle Elec. Co. 27 Wash. 70, 67 P. 379; Fort Worth & R. G. Ry. Co. v. Woodward (Tex. Civ. App.) 254 S. W. 227; Cisco & N. E. Ry. Co. v. Proctor (Tex. Civ. App.) 272 S. W. 308; Victor Am. Fuel Co. v. Tomljanovich (C. C. A.) 232 F. 662.

In Laird v. B. & M. R. R. 80 N. H. 377, 117 A. 591, decided in 1922, the New Hampshire court in discussing this question said:

"The objection to such procedure upon the ground that it violates the hearsay rule and permits the use of opinions which are not subject to cross-examination is unsound, or else it proves too much. If the opinion of one who is an authority cannot be used at all unless the holder of it be sworn and be subject to cross-examination, by what logic can the same inadmissible opinion be used as a basis for the admissible opinion of the expert witness? The opinion of the expert, qualified by study, is admitted as an exception to the hearsay rule. It is known to be founded upon the assertions of others. 1 Wig. Ev. § 687. Whether it shall be admitted or rejected depends upon the witness' familiarity with the hearsay. Unless he is thoroughly versed in that hearsay, he is not qualified to testify. The reasoning of courts excluding inquiries about the authorities, upon the cross-examination of the expert, leads directly to the conclusion that the opinion of the expert should have been excluded. If the cross-examination puts before the jury the unsworn opinion of the authority, the direct testimony of the expert does the same thing, with the added infirmity involved in his recollection of what the authorities say."

Plaintiff, then between six and seven years of age, fell from a wall and sustained an injury to his left arm and elbow which resulted in what is termed Volkmann's contracture. Defendant, called by

plaintiff for cross-examination under the statute, described the manner in which he had cared for and treated the injured arm. Plaintiff's mother apparently contradicted defendant as to the manner in which the arm had been bandaged and the length of time the bandage had remained. Plaintiff called Dr. Chowning as an expert. After establishing the qualifications of the doctor, plaintiff's counsel made a lengthy statement of the facts in respect to the injury and the treatment given it by defendant, in which he stated the facts concerning the bandaging, not as given by defendant but as given by the mother, and then asked the doctor:

"Assuming all these things to be true, have you an opinion as to whether the defendant's treatment of plaintiff's arm was according to the customary and usual practice of the ordinary careful and skilled surgical practitioner of the allopathic school in this community?"

The doctor answered that he had an opinion and that the treatment described was not in accord with such practice. He further stated, in substance, that in his opinion the condition of the arm was caused by placing a bandage about it so tightly that it obstructed the flow of blood to the muscles of the arm. On cross-examination the doctor stated that his answers on direct examination were based on the assumption that the facts stated in the hypothetical question were true. He described the condition known as Volkmann's contracture and mentioned certain doctors who had written about it. He also said that the books held up that condition as typical of what tight bandaging would do. Defendant then asked if he recognized *Annals of Surgery* as a part of the medical literature and he answered that he did. Defendant started to ask a question referring to that publication, when plaintiff objected to the reading of any article written by any doctor as hearsay and improper cross-examination and because the doctor was not under oath and could not be cross-examined. Defendant insisted that where an expert had testified as to the usual practice in his profession it was competent to test his knowledge of such practice by the commonly accepted and known textbooks and literature of

the profession. After argument the court ruled that defendant could read from the article in framing questions for the purpose of testing the witness' knowledge and skill in the matters in which he has given an opinion. Defendant then continued:

"I will ask you, Doctor, if this is not good medical surgical doctrine as laid down in the particular paragraph that I am now referring to?",

and then read excerpts from the article to the effect that, in the case of a fracture or injury in the region of the elbow joint, the conditions resulting from the injury may have the same effect as a tight bandage, and that no one factor was responsible for the production of Volkmann's contracture. The excerpt also described what usually produced that contracture. Defendant also asked similar questions and read excerpts relating to the same matter from other recognized authorities. The doctor agreed that the passages read correctly stated the doctrine and practice of the profession.

In his direct testimony the doctor, basing his opinion on the facts recited in the hypothetical question, had stated that the treatment given the injury was not in accordance with the usual practice of ordinarily skilled members of the profession, and we think it was proper on cross-examination to develop the theories and practice of the profession in respect to such injuries; and that in framing questions for that purpose it was permissible to read extracts from works or publications recognized by the profession as authority on such matters.

Furthermore, even if these extracts ought not to have been read, we fail to see any tenable ground upon which plaintiff can base a claim of reversible error, for his own expert admitted that they correctly stated the doctrine and practice of the profession in respect to such matters, and there is no evidence to the contrary. Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541.

Order affirmed.