# RUBY HILL v. ED ROSS.[1]

October 30, 1936.

No. 30,910.

*D. F. Nordstrom* and *Lauerman & Pfeiffer,* for appellant.
*Orr, Stark & Kidder,* for respondent.

LORING, JUSTICE.

In an action to recover for personal injuries, the plaintiff had a verdict of $500, $150 of which was for special damages. She moved for a new trial on the ground that the verdict was so insufficient as to indicate passion or prejudice on the part of the jury. Other grounds for new trial were assigned, and they will be discussed

[1]Reported in 269 N. W. 396.

later herein. Her motion for new trial being denied, she comes here on appeal.

■ Plaintiff is a school teacher and on April 27, 1934, was riding in a school bus driven by the defendant and asserts that one of the rear wheels of the bus came up through the floor, throwing her violently from her seat and twisting her back so that she received a lumbosacral sprain. The evidence shows that the accident had been preceded by an unusual grinding sound, that plaintiff and her companions had called the driver's attention to this noise, and that he had stopped the bus, got out, and made what the jury were justified in finding was too superficial an examination of the cause of the noise. He then proceeded a short distance and the accident occurred. The evidence of negligence on the part of the driver was sufficient to go to the jury, and, it having found for the plaintiff, we need not go further in the discussion of that question. The principal question is whether upon the medical evidence, supported by that of the plaintiff, the verdict is so insufficient as to indicate prejudice on the part of the jury. There are some other elements which may indicate why the verdict was small.

The plaintiff's family physician and a specialist in bone injuries testified in support of her claim that she suffered a lumbosacral sprain and that calcification between the lower or fifth lumbar vertebra and the sacrum had taken place. There was a dispute between plaintiff's doctors and the defendant's doctor as to whether complete fusion between those two bones had taken place. The plaintiff testified that prior to this accident she had been in perfect health, had been in the habit of taking vigorous exercise, frequently engaged in hunting and fishing, rowing a boat, taking long walks, dancing, and was quite athletic. She is a woman in her late thirties and prior to the accident weighed approximately 160 pounds. She lost weight to the extent of about 11 pounds after she had been hurt. The medical testimony on her part indicated that the sprain had resulted in the tearing of ligaments and more hemorrhage than had been absorbed and that the lime salts from the unabsorbed hemorrhage had caused the calcification and consequent limitation of motion which the plaintiff's doctors found.

There was muscle spasm, which caused constant pain, nervousness, and frequent headaches, and plaintiff now cannot be on her feet for any length of time without suffering pain in her back. She wears a sacroiliac belt, on the advice of her doctor. She testified that when she removed this at night her pain increased. Her doctor considered her condition permanent. It was the claim of the defendant's doctor that this condition which the X-rays disclosed between the fifth lumbar and the sacrum was congenital and not in any way due to any injury which she had received. In other words, the effect of the defendant's doctor's testimony was that she had not been injured in the accident. Upon his interpretation of the X-rays and his examination of the plaintiff, she would not have been entitled to recover anything from the defendant because he claimed that the condition was due to her having been born with a back of the type disclosed by the X-rays. He did not, so far as the record indicates, take into consideration the testimony of plaintiff as to her previous good health and her subsequent disability. He nowhere testified that she could not have suffered the pain which she claims to have, or that she is not disabled in the way that she says she is, merely claiming that the calcification shown by the first X-rays that were taken could not have developed in the four weeks intervening between the accident and the taking of the X-rays, and that the condition which he found and which he regarded as fusion between the two bones was congenital. Upon the whole record, we are of the opinion that either the plaintiff had suffered no injury at all or she was entitled to recover so much more than the jury gave her as to indicate that it was influenced by some prejudice in its finding. This prejudice may have been due in part to two incidents in the trial for which the defendant was responsible.

In the cross-examination of the plaintiff's specialist defendant inquired if it was not a very common condition to find six lumbar vertebrae instead of five. Just what relation that had to the case it is difficult to see, but the plaintiff's specialist denied that such was a common condition and said that in his 15 years of practice he had never seen such a case or heard of one. Thereupon the

202

defendant's counsel, after having asked if Piersol on Human Anatomy was not a recognized authority in the profession, proceeded to read from it a statement that in substance the presence of six lumbar vertebrae was a very common condition. This was objected to by plaintiff, and the objection was overruled. Thereafter defendant's counsel read from the same work:

"The last lumbar may, by an excessive growth of these elements, become sacralized, articulating more or less perfectly with the ilium, and, conversely, the first sacral may have almost freed itself from those below it."

Just what relation this statement had to the case at bar a careful examination of the medical testimony on both sides fails to disclose. Reading this statement into the record went beyond legitimate cross-examination and was, as we regard it, prejudicial error. This, together with the cross-examination in regard to the six lumbar vertebrae, probably tended to discredit the plaintiff's principal witness in the eyes of the jury. It must be borne in mind that inquiries in regard to the statements of medical books must be confined to legitimate impeachment of what the witness has testified to. Landro v. G. N. Ry. Co. 117 Minn. 306, 309, 135 N. W. 991, Ann. Cas. 1913D, 244.

At another place in the record, on cross-examination of one of the plaintiff's doctors, the defendant's counsel inquired: "Isn't it a fact that traumatic arthritis and lumbosacral sprains never came into use popularly with the medical profession until we had workmen's compensation and automobile accidents?" Objection to this question was sustained, but it was immediately followed by a question: "Isn't it true, Doctor, that the lumbosacral sprain which you have described here is commonly called a 'litigation back' or 'railroad back'?" Objection to this was likewise sustained, but the plaintiff's motion to have the court instruct the jury to disregard the insinuation of malingering contained in the questions was not granted. It is quite obvious on the face of the questions that they were asked solely for the purpose of prejudicing the jury, and the trial court should not only have restrained counsel from that line of questioning but should have directed the jury to disregard the

insinuations. Doubtless the matters referred to account for the apparent prejudice which resulted in the low verdict. On that account we think that the motion for a new trial on the ground of the insufficiency of the verdict due to prejudice should have been granted. The order appealed from is reversed and a new trial granted on the question of damages alone.

Reversed.