# JACOB E. SCHAEDLER v. NEW YORK LIFE INSURANCE COMPANY.[1]

December 3, 1937.

No. 31,434.

[1]Reported in 276 N. W. 235.

*Doherty, Rumble, Butler, Sullivan & Mitchell,* for appellant.
*Frederick J. Miller* and *Leonard L. Sumner,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying a new trial. The action was brought to recover disability benefits under a life insurance policy, dated October 5, 1931, containing also a provision to pay $50 per month in case the insured became totally disabled. Total disability was claimed from February 10 until June 10, 1936, when the action was begun. Defendant answered admitting the issuance of its life insurance policy for the quarterly premiums of $59.60, insuring plaintiff's life in favor of his wife for $5,000, and in addition agreeing, upon receipt of proof that the insured was totally and presumably permanently disabled before age 60, to pay the insured $50 each month and to waive the payment of premiums falling due after the commencement of such total disability during

its continuance. Defendant also admitted that plaintiff had furnished such proof and had demanded waiver of payment of premiums since February 10, 1936; but alleged that plaintiff has not been totally disabled, and that, even if so, the disability arose from bodily injury or disease occurring before the policy took effect which was known to plaintiff but not disclosed in the application for the policy. The answer also alleged that the policy was procured by fraud and misrepresentation and concealment of plaintiff's state of health. In addition there was a general denial. The answer then set up an equitable counterclaim, realleging the matters already referred to, and averring that defendant did not discover the falsity of the statements in the application for insurance and for reinstatement until July 1, 1936, when it notified plaintiff that it rescinded the reinstatement of the policy made December 4, 1934, and tendered back the premiums paid subsequent to October 5, 1934, when the policy lapsed for nonpayment of the premium then due and unpaid. Defendant asked for judgment that the reinstatement of the policy under date of December 4, 1934, be declared void and of no effect; that the insurance policy be declared a paid-up life policy for $4,890 effective to and including July 2, 1935; and for other equitable relief. Plaintiff replied denying the allegation of the answer except that the policy was reinstated December 4, 1934. There was a general verdict for plaintiff with special interrogatories answered by the jury, and findings by the court embracing the verdict and disposing of the issues raised by the equitable counterclaims.

Respondent's suggestion that the order is not appealable is without merit. Appellant moved in the alternative for amended findings or a new trial. While the refusal to amend the findings cannot be reviewed, the order insofar as it denies a new trial is appealable, and on such appeal any finding of fact may be challenged for insufficiency of the evidence to sustain it. Berg v. Veit, 136 Minn. 443, 162 N. W. 522; Sheffield v. Clifford, 186 Minn. 300, 243 N. W. 129.

There are numerous assignments of error, but as we view the appeal all need not be discussed. When the evidence was in and the court and counsel were considering the issues to be submitted to

the jury, defendant's counsel conceded that, during the four months for which disability benefits were claimed in this action, plaintiff was totally disabled. The court instructed the jury to return a general verdict for the party entitled thereto and to answer two interrogatories appended to the same, *viz.*:

"Question 1: Were the ailments and bodily injuries for which plaintiff consulted and was treated by physicians and other practitioners prior to December 4, 1934, of such a nature and character as to be serious and of continuing nature?

"Question 2: Were the ailments and bodily injuries for which plaintiff consulted and was treated by physicians and other practitioners prior to October 5, 1931, of such a nature and character as to be serious and of a continuing nature?"

The jury returned a general verdict for plaintiff in the sum of $205.07 and answered each interrogatory in the negative. The court made findings incorporating the verdict of the jury and ordered judgment for plaintiff in the sum mentioned. By the finding No. V the court found that in the application for the policy on October 5, 1931, plaintiff falsely answered "No" to the 7th, 8th, 9th, 10th, and 11th questions therein, and that he knew the answers were false; but the court adopted the finding of the jury that the ailments and bodily injuries for which plaintiff consulted and was treated by physicians and other practitioners prior to October 5, 1931, were not of such a nature or character as to be serious or of a continuing nature. The court also found that by the terms of the policy, when it lapsed for nonpayment of the quarterly premium due October 5, 1934, plaintiff became entitled to extended term of life insurance in the sum of $4,890 for 270 days or until July 2, 1935, and that on December 4, 1934, plaintiff applied for reinstatement of the policy upon a blank prepared for that purpose by defendant; that defendant relied upon the statements therein made; that such statements were material to the risk incurred by defendant in the reinstatement of the policy, and the same was reinstated on December 4, 1934, and has been in full force since; that defendant received and plaintiff paid all premiums from and including the

quarterly premium which fell due October 5, 1934, to and including the one which fell due April 6, 1936; that on July 1, 1936, defendant notified plaintiff in writing that it rescinded the reinstatement because of the falsity of plaintiff's statements in the application therefor and tendered back all the quarterly premiums paid on the policy since the reinstatement thereof. There are other findings not necessary now to refer to, and then this finding: "Save as hereinbefore found, the evidence is insufficient to support the allegations of defendant's answer, and the same are found not true." This negatives the charge of falsity in the reinstatement application.

As we view the verdict and the findings, the appeal presents three major questions. Was there a valid reinstatement of the policy? Was there any false statement, concealment, or fraud in the application for the policy which vitiates the disability insurance provision thereof? Did the total disability here involved "arise from bodily injury or disease occurring before the insurance under this policy took effect, and known to the insured, but not disclosed in the application for the insurance under this policy?"

The conclusion is readily reached that the reinstatement cannot be rescinded on account of any false answer, concealment, or fraud in the application for reinstatement. The policy provided for a reinstatement within five years after lapse for nonpayment of a premium upon presentation "of evidence of insurability satisfactory to the company" and payment of overdue premiums with interest. The payment required was made December 4, 1934, and the evidence of insurability then presented was satisfactory. The evidence required was true answers by the insured to three questions framed by the company. There is no claim that the third question was not answered truly. The first and second questions with plaintiff's answers are:

"1. Are you now, to the best of your knowledge and belief, in the same condition of health as you were when this policy was issued?

"Ans. Yes.

"2. Within the past two years have you had any illnesses, diseases, or bodily injuries or have you consulted or been treated by any physician or physicians?

"Ans. No."

The testimony is that plaintiff had been free from aches and pains except an attack or two of tonsilitis and the removal of the tonsils on July 12, 1932. The removal of the tonsils caused him to cease from work for about ten days. All the medical testimony is to the effect that the operation may be beneficial to health, and none that it impaired plaintiff's health. So, to the best knowledge and belief of plaintiff, he truthfully could answer "yes" to the first question. The tonsilectomy occurred more than two years before the application for reinstatement was made, and the evidence is conclusive that he neither consulted nor was treated by any physician within two years prior to December 4, 1934, the day he signed the application for reinstatement. We do not overlook a letter written by Dr. Watson to defendant in June, 1936, stating that he had treated plaintiff for arthritis in 1933 and 1934. This letter was received as impeachment of the doctor's testimony, on direct, that he had not treated plaintiff at any time during those two years. Defendant adduced no testimony that plaintiff had consulted or been treated by Dr. Watson or any physician since the tonsilectomy up to December 4, 1934. Plaintiff's positive testimony was that he had not consulted any doctor during that time, and such was the testimony of his wife. The evidence is that he had continuously worked at hard labor during the time mentioned without any complaint. Dr. Watson, when writing the letter mentioned, relied on his memory, as his records had been destroyed at the time except the ledger and certain day books, produced at the trial, which did not show any charge or entry for services during the years 1933 or 1934. Under that situation, we must hold that defendant, who had the burden of proof to establish the falsity of plaintiff's answers to the questions propounded in the application for reinstatement, has failed so to do. The policy is therefore in force, and defendant is not entitled to prevail on counterclaim.

In the answer defendant alleged that the policy was obtained by fraud, concealment, and false answers in the application for insurance. The policy is a Minnesota contract and must conform to our statutes. 1 Mason Minn. St. 1927, § 3402(3), requires every life insurance policy to contain "a provision that the policy shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force during the lifetime of the insured for two years from its date, except for nonpayment of premiums and except for violations of the conditions of the policy relating to naval and military services in time of war and, at the option of the company, provisions relative to benefits in the event of total and permanent disability  *  *  *  may also be excepted." In this policy the incontestability provision was excepted as to benefits for total disability. So it was a defense against a recovery as to disability benefits if this policy, with such benefits, was obtained by false statements in the original application, notwithstanding more than two years since its issuance had expired before disability occurred. 1 Mason Minn. St. 1927, § 3370, reads:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk."

Upon the issue whether the disability provisions of the policy became operative, defendant assigns error on the last clause in finding No. V and upon the instructions of the court relating thereto. The first part of finding No. V is more favorable to defendant than warranted by the evidence. For instance, the court finds the seventh question in the application was knowingly answered falsely by plaintiff, viz.:

"Have you ever had any accident or injury or undergone any surgical operation?

"No."

The only evidence from which to infer untruthfulness therein was that of plaintiff that, when a soldier in France, he strained his back in lifting heavy ammunition boxes. But he was not disabled, was not hospitalized, and remained on duty. Eight or nine years later he was given light treatment for backache and adjustment of the vertebrae by a chiropractor, also two like adjustments by the latter in January, 1931. The treatments were so taken as not to interfere with his work; he did his ordinary heavy work without interruption all the time up to October 5, 1931. Would any ordinary person with such a record of continuous hard labor for a period of 12 years think that he had had an injury or accident worth mentioning in an application for disability insurance? The answer to question No. 8 that he had not consulted a doctor for or suffered from ailments to the brain or nervous system, to the heart, blood vessels, or lungs was false according to finding No. V. There is not a particle of evidence that he had suffered from or consulted any doctor for any such ailment, unless the adjustment of the vertebrae of the spine by a chiropractor can be said to involve the brain or nervous system. The answer to the 9th question, that he had had no rheumatism, the court did find false, and there is sufficient evidence to sustain the finding, provided plaintiff knew that his backache was rheumatism or arthritis. The answer to the 11th question in the application for insurance has more of a bearing upon the issue now being considered than any of the others. The question reads:

"11. What physicians or practitioners, if any, not named above, have you consulted or been examined or treated by within the past five years?

"None."

The court properly found that the answer was false and known by plaintiff to be so, for he had been treated by Dr. Watson and by a chiropractor within the five years. With this finding in defendant's favor, can it be said that the errors assigned upon the charge relative to the second interrogatory in the verdict are well taken, and that this part of the No. V finding is not sustained, viz.: "but the ailments and bodily injuries for which plaintiff consulted

and was treated by physicians and another practitioner prior to December 4, 1934, were not of such a nature or character as to be serious or of a continuing nature." The date should be October 5, 1931, because, as above determined, there were no misrepresentations in the application for reinstatement. The finding challenged is therefore the finding of the jury upon the second interrogatory in the verdict. We think the evidence is ample to sustain the finding that the ailments for which plaintiff consulted and was treated by Dr. Watson and the chiropractor within the five years prior to October 5, 1931, were trivial and temporary, not serious or continuous in nature. Having this in mind, was there prejudicial error in the instruction here assailed which should lead to a reversal? Defendant took no exception to the charge at its conclusion, except to the failure to submit another issue, and that issue was thereupon submitted so that no objection is now raised thereto. Therefore, no mere verbal inaccuracies or inadvertent misstatements, which in all probability would have been corrected had the court's attention been called thereto before the jury retired, should warrant a new trial. Steinbauer v. Stone, 85 Minn. 274, 88 N. W. 754. To this class belongs this statement found among a page of recital of conceded facts: "There is no question of fraud in the securing of the policy or in the securing of the application." The parts of the charge not excepted to at the trial but now urged as erroneous are designated as (b), (c), (d), and (e). Of these, (c) and (d) relate to the reinstatement, and, plaintiff being entitled to prevail upon that issue, error in the manner of submitting it is no ground for a new trial. The remaining two instructions claimed to be erroneous relate to the misrepresentations in the application for insurance and the effect thereof. They read:

(b) "If they [ailments] were of a mere temporary immaterial character, if they were of the kind I first described which were soon forgotten, or not continuing, or not serious, or were not dangerous, the question then would be whether—in that event if the disability that he previously sustained was wholly temporary and of the kind I first described, the question of whether he did intend to deceive or

defraud would not be material.  It would not be—the plaintiff could recover in any event if there was no seriousness to those previous injuries within the meaning as I have explained before."

(e)  "If plaintiff was in fact suffering from a disability which was of a permanent nature and serious prior to October 5, 1931, his statement in the initial application with reference to that matter was demanded, and it would be wrong not to so state; but if he made truthful answers, if his answers were truthful, the recovery under the policy would be undoubted.  That is, if the statements were not material in affecting the risk of loss, or if they were honestly made and if they didn't affect the risk of loss or increase the risk of loss."

No doubt the thought sought to be conveyed was not aptly expressed.  The law is well settled in respect to the application of § 3370 to misrepresentations of the insured in obtaining a life insurance policy.  A material misrepresentation made with intent to deceive or defraud avoids the policy.  A material misrepresentation not made with intent to deceive or defraud does not avoid the policy unless by the misrepresentation the risk of loss is increased.  If a material misrepresentation increases the risk of loss it avoids the policy regardless of intent.  An immaterial representation, though made with intent to defraud, does not avoid the policy.  Whether a misrepresentation is material, and whether it increases the risk of loss, and whether it is made with intent to deceive are usually questions of fact for the jury, with the burden of proof upon the insurer.  Johnson v. National L. Ins. Co. 123 Minn. 453, 144 N. W. 218, Ann. Cas. 1915A, 458; Olsson v. Midland Ins. Co. 138 Minn. 424, 165 N. W. 474.  Truthful answers to questions relative to medical consultation and treatment are material to the risk, and, if false, the policy may be avoided; but this does not require the disclosure of medical consultation or treatment for slight or temporary ailments.  Shaughnessy v. New York L. Ins. Co. 163 Minn. 134, 203 N. W. 600; Iblings v. Phoenix Mut. L. Ins. Co. 172 Minn. 341, 215 N. W. 429; Laury v. Northwestern Mut. L. Ins. Co. 180 Minn. 205, 230 N. W. 648, 231 N. W. 824; Elness v. Prudential Ins.

Co. 190 Minn. 169, 251 N. W. 183; Robbins v. New York L. Ins. Co. 195 Minn. 205, 262 N. W. 210, 872. These cases indicate that the risk of loss is not increased by failure to disclose medical consultation or treatment for trivial, temporary ailments deemed cured. The jury's answer to the second interrogatory in the verdict finds the consultation and treatment by the physicians and practitioners prior to issuance of the policy was for passing and nonserious ailments. In other parts of the charge, not challenged, the court instructed the jury that if the questions in the application for insurance were answered falsely the burden shifted to plaintiff to satisfy the jury by a fair preponderance of the evidence that ailments and injuries he had prior to October 5, 1931, "were of negligible importance. That is, that they didn't influence the writing of this insurance or would not have influenced the writing of this insurance had he truly answered the questions." The balance of the charge related almost wholly to the application for reinstatement, which could not affect the appeal. We conclude that inaccuracies in the portions of the charge now assigned as erroneous should not result in a retrial.

Error is assigned because defendant was denied the right to make the closing argument to the jury. There was here no error. While defendant at the close of the case admitted that plaintiff was totally disabled during the four months for which suit was brought, plaintiff in the complaint alleged the contract in the words of the policy, "that such total disability did not arise from bodily injury or disease occurring before the insurance under this policy took effect, and known to the insured, but not disclosed in the application for the insurance under this policy." Defendant did not admit that the total disability did not arise from bodily injury or disease occurring prior to October 5, 1931. That question was an issue under the pleadings, and the court charged that "if that present disease or injury from which he is now suffering arose from a bodily injury or disease occurring before October 5, 1931, the plaintiff could not recover the disability benefits sued for."

It is also urged that in the cross-examination of defendant's medical witness, Dr. Evans, plaintiff, over objection, was permitted to

ask improper hypothetical questions to defendant's prejudice. The cross-examination of an expert witness is largely left to the discretion of the trial court, as long as such cross-examination tends to bear upon the opinions expressed on direct. The cross-examiner is not restricted to obtaining the conclusion or opinion of such witness simply upon the facts already adduced by the other party, but on the hypothesis of assumed facts whereby to test the reliability of the opinion the witness gave on direct examination. Cross-examination of a competent medical expert seldom fortifies the case made by the cross-examiner. And, as we read the record here, no possible prejudice resulted to defendant from the hypothetical questions asked Dr. Evans on cross-examination. The cases cited by defendant relate to hypothetical questions by the party calling the expert, the one exception being Hill v. Ross, 198 Minn. 199, 269 N. W. 396. And in that case the vice of the cross-examination consisted in reading from a medical work something not pertinent to any issue tried. The other cases cited are Wittenberg v. Onsgard, 78 Minn. 342, 81 N. W. 14, 47 L. R. A. 141; Frigstad v. G. N. Ry. Co. 101 Minn. 40, 111 N. W. 838; Harju v. Allen, 146 Minn. 23, 177 N. W. 1015; Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142. No error is assigned in this court upon the hypothetical questions asked Dr. Fortier, plaintiff's medical expert.

The claim that this policy does not cover disability sustained in naval or military service was not raised at the trial, and we think the reference to such service in the policy must be construed as relating to service rendered subsequent to procuring the policy. As far as the right to recover disability benefits, the court charged the jury, in substance, that if the total disability now existing arose from accident or injury occurring during plaintiff's service in the World War, or prior to October 5, 1931, he could not recover the benefits sued for. This is as favorable construction of the policy as defendant could ask.

Misconduct of counsel for plaintiff is earnestly urged as ground for new trial. We consider the argument relating to exhibit 6-D, so far as the court let it go, not objectionable. This was a history taken down by someone when plaintiff was admitted to the veter-

ans' hospital after his total disability had occurred. The one who wrote it down was not a witness, and plaintiff had not signed it. The other misconduct was that in the closing argument counsel stated:

"This jury should tell the directors of the New York Life Insurance Company that we will not tolerate such a defense to a policy that you issued in this county to take the people's money and then when a man is seriously disabled try to get out of paying him his just dues through such technicalities and high-class witnesses like Dr. Evans.

Mr. Sullivan: "Object to that statement, it is improper argument and has no bearing on the issues here and is prejudicial.

The Court: "The jury will be instructed to disregard the argument."

Had the words "and high-class witnesses like Dr. Evans" been omitted, there could have been no valid objection to the statement, for, as we read the record, there was no meritorious defense to paying the disability benefits sued for. The reference to Dr. Evans may be taken as complimentary. And we are sure that no one who heard his testimony or reads this record can form any other opinion than that Dr. Evans was a high-class witness in the best sense of the word "high-class." If there was anything prejudicial in counsel's remarks the court's disapproval in the presence of the jury was adequate for this case without a formal instruction in the charge, evidently omitted through oversight.

From what has already been said it is clear that this is not a case where defendant was entitled as a matter of law either to a directed verdict or favorable findings.

The order is affirmed.