Shari BIGAY, Appellant,

v.

Timothy A. GARVEY, M.D., Gary Banks, M.D., Respondents,

Jeffrey Dick, M.D., Defendant,

Regents of the University of Minnesota, d/b/a The University of Minnesota Hospital and Clinic, Respondent.

No. C9–96–1033.

Court of Appeals of Minnesota.

May 6, 1997.

Review Granted June 30, 1997.

Theodore G. Gudorf, O'Loughlin & Gudorf, Dayton, OH, Michael J. O'Loughlin, Minneapolis, Stephen E. Yoch, Geoffrey P. Jarpe, Maun & Simon, PLC, St. Paul, for Appellant.

William M. Hart, Joseph W.E. Schmitt, Robert M. Frazee, Meagher & Geer, P.L.L.P., Minneapolis, for Respondent Gary Banks.

Anne T. Johnson, Barry G. Vermeer, Gislason, Dosland, Hunter & Malecki, Minnetonka, for Respondent University of Minnesota Hospital and Clinic.

Charles E. Lundberg, Kathryn Davis Messerich, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Respondent Timothy A. Garvey.

Considered and decided by CRIPPEN, P.J., and LANSING and PETERSON, JJ.

## OPINION

LANSING, Judge.

A surgical patient who suffered a perforated ileum and sigmoid colon during a spinal fusion operation challenges evidentiary rulings and an adverse jury verdict. We find no reversible error in the evidentiary rulings and affirm the jury verdict. We also affirm the district court's entry of a directed verdict dismissing the patient's negligent supervision claim against the hospital. We reverse, however, the district court's pretrial order disallowing, as time-barred, an amended claim for negligent treatment.

## FACTS

Shari Bigay first met with Dr. Timothy Garvey at the Veterans' Administration Medical Center in 1992 to seek treatment for lower back pain. Garvey diagnosed degenerative disk disease at the level of L5–S1 and foraminal stenosis, and recommended back surgery. In later meetings Garvey discussed surgical options and recommended to Bigay that she undergo spinal fusion surgery. On May 28, 1992, Bigay signed a written consent for the surgery.

On June 3, 1992, Garvey and Dr. Gary Banks performed the spinal fusion surgery on Bigay at the University of Minnesota Hospital and Clinic (UMHC). The surgical process involved removing the diseased disk material and fusing the spine with a graft of morcellized bone. Removing the disk material may require up to 300 passes into the disk space with surgical instruments. Following the surgery Bigay began to experience pain in her abdomen. Dr. John Delaney performed an exploratory laparatomy that revealed multiple lacerations of her ileum and sigmoid colon. Delaney performed a double colostomy to stop the spread of substantial fecal peritonitis. Further complications required additional surgery.

Bigay filed her original complaint in this action on June 2, 1994, almost exactly two years after the spinal fusion was performed. The complaint alleged that Garvey and Banks were negligent in the performance of the spinal fusion surgery and sought damages for Bigay's injuries. In May 1995, about six months before trial, the district court permitted Bigay to amend the complaint to add a claim against her doctors for negligent nondisclosure of treatment risks and alternatives, but reserved the issue of whether the claim was time-barred. According to Bigay's amended complaint, the doctors failed to inform her of the experimental nature of the surgery, its risks, its lack of success, and other alternatives. Prior to trial the district court struck the negligent nondisclosure claim, reasoning that it was barred by the statute of limitations.

The trial began on November 6, 1995. At the close of plaintiff's case-in-chief, the district court directed a verdict for UMHC on the negligent supervision claim. The jury returned a verdict on the remaining issues, finding that Garvey and Banks were not negligent in their treatment of Bigay. Bigay's posttrial motions were denied, and Bigay now appeals.

## ISSUES

I.  Did the district court err in ruling that the amended complaint's negligent non-

disclosure claim was barred by the statute of limitations?

II.    Is a new trial required because of the district court's evidentiary rulings?

III.    Is the evidence sufficient to support the verdict?

IV.    Did the district court err in directing a verdict in favor of UMHC?

## ANALYSIS

### I

Shari Bigay served her original complaint on June 2, 1994, alleging negligent treatment. The complaint was served within the two-year statute of limitations that governs actions against physicians and surgeons. *See* Minn.Stat. § 541.07(1) (1996). The amended complaint for negligent nondisclosure was served on March 29, 1995, well beyond the limitations period. The district court ruled that the statute of limitations barred Bigay's claim for negligent nondisclosure, after concluding that the claim did not relate back to the negligent treatment alleged in the original complaint.

The district court further held that even if the nondisclosure claim related back, it was still time-barred because it arose on May 28, 1992, the day Bigay signed the surgical consent form, and the statute of limitations on the nondisclosure claim had run before June 2, 1994, when Bigay sued for negligent treatment.

■    Whether Bigay satisfies the requirements of Minnesota Rule 15.03, allowing claims in an amended complaint to relate back, is a question of law subject to de novo review. *Carlson v. Hennepin County,* 479 N.W.2d 50, 53 (Minn.1992). Minnesota Rule 15.03 applies the same standard as Federal Rule of Civil Procedure 15(c), permitting relation-back "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Minn. R. Civ. P. 15.03.

■    The doctors argue that because the amended pleading is a new cause of action, requiring proof of different elements, it can-

not relate back to the original complaint. *See Plutshack v. University of Minn. Hosps.,* 316 N.W.2d 1, 5, 9 (Minn.1982) (stating elements of negligent treatment and negligent nondisclosure claims). We agree that negligent treatment and negligent nondisclosure are different causes of action, but we disagree that this distinction determines whether the amended claim relates back.

■    The determination on whether a claim relates back focuses on whether there are common facts underlying the claim:

> The principle of relation back of amended pleadings existed in prior law, but it was limited to an amendment which did not state a new cause of action. The harshness of the rule was modified by a liberal construction of a 'cause of action.' In accord with this liberal application of the principle, the rule requires only that the amendment arise out of the 'conduct, transaction or occurrence' set forth in the original pleading.

*Swenson v. Emerson Elec. Co.,* 374 N.W.2d 690, 696 (Minn.1985).

■    Focusing on the facts underlying the claim rather than comparing the causes of action comports with the shift from "code pleading" to "notice pleading." *See generally* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1216–18 (2d ed.1990). If the original and the amended claim are based on common facts, the original claim provides notice of the transaction:

> The rationale of allowing an amendment to relate back is that once a party is notified of litigation involving a specific factual occurrence, the party has received all the notice and protection that the statute of limitations requires.

3 Jeremy C. Moore, Moore's Federal Practice ¶ 15.19[1] (3d ed.1997). So long as the original pleading gives fair notice of the fact situation from which the claim or defense arises, Rule 15(c) permits a wide range of amendments: a change in the legal theory of the action or an amendment that adds a claim arising out of the same transaction or occurrence. *Id.* ¶ 15.19[2].

The original complaint in this case contained a specific allegation that Bigay's doctors failed to meet the standard of care customarily exercised by similarly trained physicians in performing a surgical procedure. The amended complaint alleged the failure to inform Bigay of the experimental nature of the surgical procedure. These claims both arise from the same general conduct and occurrence that caused Bigay's injury and are based on a common factual transaction: surgical treatment for Bigay's lower back pain. The factual commonality is evident. The parties are the same in both the original and amended petition, Bigay signed the consent form during a consultation with Garvey that occurred shortly (five days) before the surgery, and the consent was for the surgery from which the original claim arose. The consent consultation and any other visits Bigay made in preparation for surgery represent one continuous transaction in which the doctors provided medical care and surgical treatment for Bigay's lower back pain. Bigay's relationship with the doctors was formed by her need for back surgery: she was not contracting for a series of meetings with the doctors; she was contracting for an ongoing continuum of care directed toward the single goal of correcting her degenerative disk disease.

The large majority of cases in other jurisdictions permit a claim for a physician's failure to inform of a risk or alternative treatment plan to relate back to a negligent treatment claim. In *Grosse v. Friedman*, 118 A.D.2d 539, 498 N.Y.S.2d 863, 865 (N.Y.App.Div.1986), the court permitted the plaintiff to amend the complaint because no "significant prejudice would result." In *Estrada v. Jaques*, 70 N.C.App. 627, 321 S.E.2d 240, 245 (1984), the court found that the original complaint provided the surgeons with sufficient " 'notice of the transactions, occurrences, or series of transactions' " in the amended complaint. (Citation omitted.) The court in *Gunter v. Plauche*, 439 So.2d 437, 440 (La.1983), permitted relation-back when there was some factual connection between the two claims. And in *Oakes v. Gilday*, 351 A.2d 85, 88–89 (Del.Super.Ct.1976), the court permitted the amended complaint

to add a "second legal ground or concept upon which to found the same claim." *See also Karash v. Pigott*, 530 S.W.2d 775, 777 (Tenn.1975) (allowing claim based on failure to disclose and obtain informed consent to relate back to negligent treatment claim); *Wagner v. Olmedo*, 323 A.2d 603, 604 (Del.Super.Ct.1974) (same); *Neeriemer v. Superior Court of Maricopa County*, 13 Ariz.App. 460, 477 P.2d 746, 749 (1970) (same), *review denied* (Ariz. Jan. 12, 1971); *Brown v. Wood*, 202 So.2d 125, 128–29 (Fla. Dist.Ct.App.1967) (same); *but see Jolly v. Russell*, 203 A.D.2d 527, 611 N.Y.S.2d 232, 233 (N.Y.App.Div.1994) (prohibiting relation-back because original bill of particulars did not clearly allege facts to support cause of action to recover damages for lack of informed consent).

A federal court in construing Federal Rule of Civil Procedure 15(c) has also held that a negligent nondisclosure claim arises from the same conduct, transaction or occurrence as negligent treatment. *Azarbal v. Medical Ctr. of Del., Inc.*, 724 F.Supp. 279, 283 (D.Del.1989) (finding claim that doctor failed to obtain mother's informed consent to sterilization relates back to date of the original complaint for negligent treatment during amniocentisis). The doctors point to another federal case, *Moore v. Baker*, 989 F.2d 1129 (11th Cir.1993), as providing an opposing result. Unlike Bigay's complaint, however, the original complaint in *Moore* did not allege facts sufficient to provide notice to the doctors about a future claim for negligent nondisclosure. *Id.* at 1131.

Bigay's negligent nondisclosure claim arose from the same transaction as her negligent treatment claim. The original complaint provided notice of the facts underlying the negligent nondisclosure claims, and the amended complaint relates back to the original complaint, filed within two years of Bigay's surgery.

■ The remaining question posed by the doctors is whether the statute of limitations for negligent nondisclosure began to run when Bigay signed the consent form on May 28, 1992, and thus the claim for negligent nondisclosure, even though relating back,

would have expired before the two-year period counted from the day of surgery. We find the doctors' argument on this point to be unpersuasive.

■ The limitations period ordinarily begins to run upon termination of the treatment for which the physician was retained. *Togstad v. Vesely, Otto, Miller & Keefe,* 291 N.W.2d 686, 694 (Minn.1980). A single-act exception exists if the injury is a single act of negligence, which is complete at a precise time, which no continued treatment can cure, and the claimant is actually aware of the facts on which the claim is based. *Haberle v. Buchwald,* 480 N.W.2d 351, 355 (Minn.App. 1992).

The single-act exception does not apply to bar Bigay's negligent nondisclosure claim because the alleged failure to inform was not complete at a precise time before the surgery, a failure to inform could still have been cured before the surgery, and Bigay was not aware of the alleged undisclosed facts before the surgery was completed. In negligent nondisclosure cases applying the single-act exception, the point in time identified when the limitations period begins to run is not when the informed consent should have been given, but the date of surgery. *E.g., Gulley v. Mayo Found.,* 886 F.2d 161, 163 (8th Cir.1989) (applying Minnesota law); *Haberle,* 480 N.W.2d at 351; *Offerdahl v. University of Minn. Hosps.,* 426 N.W.2d 425, 429 (Minn. 1988) (noting that cause of action begins to accrue when plaintiff sustains damage).

The negligent nondisclosure claim relates back to the original negligent treatment claim that was timely brought within two years of the surgery, and because the limitations period did not begin to run before the operation, Bigay's amendment for negligent nondisclosure was within the limitations period.

## II

Bigay appeals four evidentiary rulings relating to her proof of negligent treatment. Three of the rulings involved the testimony of Dr. James Ogilvie, a medical witness listed as an expert by Banks but called as a rebuttal witness by Bigay.

Bigay asserts that the district court committed reversible error by allowing Ogilvie, without proper foundation, to express an opinion on whether Garvey and Banks had been negligent; permitting cross-examination of Ogilvie that exceeded the scope of direct examination; and refusing to allow Bigay to inquire into Ogilvie's affiliation with Banks and Garvey and his possible bias.

■ The competency of a witness to provide expert medical testimony depends on the degree of the witness's scientific knowledge and the extent of the witness's practical experience. *Reinhardt v. Colton,* 337 N.W.2d 88, 93 (Minn.1983). Bigay's attorney established that Ogilvie is the Interim Chairman of Orthopedic Surgery at the University of Minnesota, that he is a practicing orthopedic surgeon, and that he had personally supervised Banks in prior surgeries. Ogilvie further testified that he had reviewed Bigay's medical files, portions of her testimony, and her CT scan. Ogilvie's qualifications, practical experience, and knowledge of procedures in Bigay's surgery more than satisfy the foundation required to express a medical opinion.

■ Cross-examination is usually limited to the subject matter of direct examination or issues affecting credibility. Minn. R. Evid. 611(b). But the court may, in the exercise of discretion, permit inquiry into additional matters not raised in direct examination. *Id.* The scope of cross-examination of a medical expert is largely left to the district court's discretion. *Schaedler v. New York Life Ins. Co.,* 201 Minn. 327, 338, 276 N.W. 235, 241 (1937).

■ Bigay cites no authority for her claim that it was an abuse of discretion to allow Ogilvie to testify on the issue of negligent treatment. In direct examination Ogilvie testified to Bigay's anatomical and medical condition and the most common cause of bowel penetration into the spine during spinal fusion surgery. Ogilvie's testimony on cross-examination on whether the standard of care had been breached was related to the direct examination. Permitting the testimony was within the district court's wide latitude of discretion. *See State by Lord v.*

702

*Pearson,* 260 Minn. 477, 488, 110 N.W.2d 206, 215 (1961) (allowing cross-examination of expert witness to extend beyond matters brought out on direct).

Bigay's final objection to Ogilvie's testimony is that her attorney was not allowed to question Ogilvie about his relationships with Garvey and Banks and his possible bias or prejudice. The district court prohibited this line of questioning as cumulative.

Evidence of bias, prejudice, or interest of the witness for or against any party is relevant and admissible. Minn. R. Evid. 616 cmt. (stating that a witness's bias, prejudice, or interest is a fact of consequence). Cross-examination of an adverse witness is essential to ensure a fair trial and has been characterized as an "inviolate right." *Klingbeil v. Truesdell,* 256 Minn. 360, 366, 98 N.W.2d 134, 140 (1959); *see also Alford v. United States,* 282 U.S. 687, 691, 51 S.Ct. 218, 219, 75 L.Ed. 624 (1931). Without the opportunity to hear relevant testimony that reveals a witness's possible prejudice or bias stemming from association, employment, or other facts, the jury is not able to evaluate that witness's testimony and place it in the proper context. *See Esser v. Brophey,* 212 Minn. 194, 200, 3 N.W.2d 3, 6 (1942) (noting that "it always is permissible" to cross-examine a witness on bias affecting credibility). Because the existence of interest or bias is so critical to credibility, the court's failure to allow questioning on these issues is error.

Bigay argues that her case was fatally prejudiced by the ruling because the jury did not hear evidence that Ogilvie was hired by the defense, directly supervised Garvey, and was employed by a corporation in which Garvey is a fifty-percent shareholder. Our review of the transcript confirms that each of these associations had been testified to or referred to at earlier points in the trial. Ogilvie testified that he is the Interim Chairman of Orthopedic Surgery at the University of Minnesota; Garvey testified that he is an assistant professor in the Department of Orthopedic Surgery at the University of Minnesota; Ogilvie testified that he had recommended Banks for a faculty appointment; and Banks testified that he had performed surgical procedures with Og-

ilvie. Bigay's attorney identified Ogilvie as a "defense expert" at the beginning of two of his questions. Although an attorney's questions are not evidence and, in this case, were curtailed by sustained objections, it was clear that Ogilvie had been subpoenaed by Bigay and was an unwilling witness. The jury also heard testimony that Ogilvie had a personal contract with Spine Surgeons of Minnesota and that Garvey was a fifty-percent shareholder in that corporation. Bigay's attorney argued to the jury that this relationship affected Ogilvie's opinion on whether Garvey and Banks were negligent.

To constitute reversible error, an evidentiary ruling must be prejudicial. *Uselman v. Uselman,* 464 N.W.2d 130, 138 (Minn. 1990). That we disagree with a district court's ruling and would have made a different one is not a sufficient basis for reversal. *Williams v. Wadsworth,* 503 N.W.2d 120, 123 (Minn.1993). Only when excluded evidence might reasonably have changed the result is the exclusion grounds for a new trial. *Jenson v. Touche Ross & Co.,* 335 N.W.2d 720, 725 (Minn.1983). Because the evidence of Ogilvie's association with Garvey and Banks is in the record, albeit in a fragmented fashion, we conclude that the failure to allow cross-examination on Ogilvie's possible bias did not cause reversible error.

Finally, Bigay challenges the district court's exclusion of two letters to Bigay's attorney written by her medical expert, Dr. Michael Ford. The letters summarized Bigay's medical treatment and expressed Ford's opinion that the treatment was experimental. During cross-examination and redirect examination, Ford was extensively questioned on whether the letters were consistent with his testimony. Bigay claims prejudice because the district court initially received the letters into evidence during the redirect examination of Ford and later, at the close of trial, excluded them as cumulative. *See* Minn. R. Evid. 403. The retraction of the admissibility ruling does not necessarily equate to error. *See Warrick v. Giron,* 290 N.W.2d 166, 169–70 (Minn.1980) (affirming exclusion of medical report even though admitted on first day of trial). The substance

of the letters was covered in testimony, and any minimal prejudice resulting from this exclusion does not amount to reversible error.

## III

When a jury's verdict resolves conflicts in evidence, a reviewing court is bound to consider the evidence in a light most favorable to the verdict and to sustain the verdict if it is possible to do so on any reasonable theory of evidence. *Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn. 1984). A jury's verdict will not be set aside unless it is manifestly and palpably contrary to the evidence. *Alevizos v. Metropolitan Airports Comm'n*, 452 N.W.2d 492, 499 (Minn.App.1990), *review denied* (Minn. May 11, 1990). Thus a jury's verdict will be overturned only if no reasonable mind could find as the jury did. *Hauenstein*, 347 N.W.2d at 275.

The jury heard and considered conflicting evidence on accepted medical standards of care and whether those standards had been breached by Garvey and Banks in performing the surgery. The doctors presented expert medical testimony through Dr. James Simmons and Ogilvie. This evidence was supplemented by Banks's and Garvey's own testimony that the procedure was acceptable to the medical community and that Banks and Garvey did not deviate from the standard of care in providing medical treatment to Bigay. Bigay presented testimony through Ford, her medical expert, that there had been a deviation from the accepted standard. This evidence was supplemented by testimony from Delaney and Dr. John Senior.

The jury is in the best position to observe expert medical testimony and to weigh the evidence. *Leonard v. Parrish*, 420 N.W.2d 629, 633 (Minn.App.1988). The medical experts presented divergent but factually-based opinions that required the jury to exercise its function as factfinder. The evidence did not point conclusively to one outcome, and the verdict is not "perverse and palpably contrary to the evidence." *See Germann v. F.L. Smithe Machine Co.*, 381 N.W.2d 503, 507 (Minn.App.1986), *aff'd* 395 N.W.2d 922 (Minn. 1986) (verdict may be set aside only when evidence so clear that no room for difference among reasonable people).

Because the verdict is supported by the evidence and not affected by reversible evidentiary errors on liability issues, we do not address Bigay's assignment of error on evidentiary issues relating to damages.

## IV

At the close of Bigay's case-in-chief, the district court directed a verdict for UMHC on Bigay's negligent supervision claim. Bigay argues that the directed verdict was error because questions of fact created an issue for a jury.

Minnesota law requires the district court to direct a verdict when the evidence so overwhelmingly predominates in favor of a party that it leaves no doubt as to the resolution of an issue. *Plutshack*, 316 N.W.2d at 5. In reviewing a directed verdict, appellate courts consider the evidence and inferences to determine independently whether the evidence is sufficient to present a question of fact for the jury. *K.L. v. Riverside Med. Ctr.*, 524 N.W.2d 300, 302 (Minn.App.1994), *review denied* (Minn. Feb. 3, 1995).

Bigay did not plead or prove a vicarious liability claim against UMHC. The complaint did not allege respondeat superior, vicarious liability, or an employment relationship, and there is no evidence that the surgeons performed the surgery in their capacity as employees of UMHC. There is evidence that Bigay was a private patient of Garvey's practice group which is separate from UMHC. Bigay first consulted with Garvey at the Veteran's Administration Hospital, but because the general waiting list was eighteen months, Garvey offered to perform the surgery at UMHC or Abbott Northwestern.

The record contains no expert testimony on any standard of care that UMHC had in the supervision of doctors performing surgery in its facility or in the supervision of faculty physicians or a faculty physician's choice on execution of medical procedures.

Similarly, there is no evidence that UMHC deviated from any standard of care.

Because Bigay offered no evidence of the relationship between the doctors and the hospital or any testimony on the hospital's standard of care, the district court properly directed a verdict for UMHC on Bigay's negligent supervision claim. *See Reinhardt*, 337 N.W.2d at 95 (affirming directed verdict when evidence was insufficient to present a question of fact for jury determination).

## DECISION

We affirm the district court's entry of a directed verdict dismissing the negligent supervision claims against UMHC. The evidentiary rulings did not inject reversible error into the trial, and the jury's verdict on negligent treatment is supported by the evidence. Because the amended claim for negligent nondisclosure related back to the original complaint, it was not barred by the statute of limitations, and we reverse and remand the district court's dismissal of the amended complaint.

**Affirmed in part, reversed in part, and remanded.**